512 A.2d 75

Ralph Staino, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Respondent.

462

Submitted on briefs April 10, 1986, to Judges MAC-PHAIL and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Edward A. Rudley, Rudley, Ziccardi & Fioravanti,* for petitioner.

*John B. Hannum, Jr.,* with him, *Gerald T. Osburn,* for respondent.

*Samuel E. Dennis,* with him, *Stewart L. Cohen;* Of Counsel: *Meltzer & Schiffrin,* for intervenor, Eagle Downs Racing Association.

OPINION BY SENIOR JUDGE BARBIERI, July 1, 1986:

Ralph Staino appeals here the adjudication of the Pennsylvania State Horse Racing Commission (Commission) dismissing his appeal after being ejected from Keystone Race Track by the Eagle Downs Racing Association.

The Commission, after hearing, found that Mr. Staino was present at Keystone Race Track as a patron on September 29, 1982, when he was served with an ejection notice by a representative of the Eagle Downs Racing Association (Eagle Downs), a licensed corporation. The Commission concluded that, since under Section 215 of the Horse Race Industry Reform Act (Act), Act of December 17, 1981, P.L. 435, 4 P.S. §325.215, a licensed corporation's authority to eject patrons from the race track is limited only to the extent that the person may not be ejected because of his race, color, creed, sex, national origin or religion, and, since Mr. Staino had not established a prima facie case of ejectment for one or more of the prohibited reasons, his appeal must be dismissed.

Mr. Staino argues on appeal that Section 215 of the Act is vague and unconstitutional, that a race track, because it raises revenue for the state through pari-mutuel betting and because it is closely regulated by the state, is a quasi-public facility whose actions are governed by the due process clause of the Fourteenth Amendment, that he was denied his constitutional right to attend the race track, and that the Commission's findings and conclusions are not supported by the substantial evidence of record.

We address first Mr. Staino's argument that Section 215 of the Act is vague and unconstitutional. We note initially that there is a strong presumption in favor of the constitutionality of statutes and the party challenging a statute's constitutionality has a heavy burden to

rebut that presumption, with all doubts resolved in favor of sustaining the legislation. *Daly v. Pennsylvania State Horse Racing Commission,* 38 Pa. Commonwealth Ct. 77, 391 A.2d 1134 (1978). The unconstitutionality of Section 215, according to Mr. Staino, arises from a supposed difference in standards by which the propriety of an ejectment is judged depending upon the stage of the appeal process. Apparently, Mr. Staino believes that an ejection is subject to closer scrutiny at the Commission level than at the race track when the ejection occurs. Unfortunately, Mr. Staino fails to properly analyze the statute. Under Section 215 *either* the Commission *or* a licensed corporation may eject a patron from a race track and the actions of each are subject to different standards. Under subsection (b), as we have previously stated, a *licensed corporation* has carte blanche to eject a patron without cause except that it may not eject a patron because of the patron's race, color, creed, sex, national origin, or religion. Under subsection (a), however, the *Commission's* authority to eject a patron is restricted to the extent that the Commission must establish that the presence of the person whom the Commission wishes to eject "is, in the judgment of the [C]ommission, inconsistent with the orderly or proper conduct of a race meeting or . . . is deemed detrimental to the best interest of horse racing."[1] Thus, the ejection is not judged differently depending upon the stage of the proceedings, but, rather, depending upon the identity of the ejector. A racing association may eject a patron without cause while the Commission may not.

---

[1] Subsection (c), applicable to ejection of *licensees* by racing associations, similarly limits the authority of a racing association to eject a *licensee* employed at his occupation at the race track. The racing association must establish that the licensee's presence at the race track is detrimental to the best interests of horse racing, and it must provide its reasons for its determination.

The law has not always been thus. The current legislation was enacted subsequent to *Rockwell v. Pennsylvania State Horse Racing Commission,* 15 Pa. Commonwealth Ct. 348, 327 A.2d 211 (1974) in which this Court held that the statute preceding the current legislation, the Act of July 24, 1970, P.L. 634, *amending* the Act of December 11, 1967, P.L. 707, formerly 15 P.S. §2662.1, abrogated the common law doctrine permitting race tracks to eject patrons without cause. Comparison of the language of the former statute with the language of the present statute, plus comparison of various subsections within the statute, demonstrate the legislature's clear intent. Contrary to Mr. Staino's assertion, the statute is unambiguous in its affirmation of the licensed corporation's right to eject Mr. Staino, a patron, from Keystone Race Track without cause.

We next address Mr. Staino's argument that because the racing association operates a quasi-public facility that it is, therefore, bound by the Fourteenth Amendment to the Constitution. We note parenthetically that, again, throughout his second argument, Mr. Staino refers to Eagle Downs and to the Commission interchangeably and without distinction provided by statute. Of course, ejection by the Commission is state action and thus, the statute provides certain procedural safeguards including a requirement that the ejection be for cause and that the person ejected be provided a hearing on the issue of cause. The action of the private racing association, albeit a licensed corporation, on the other hand, in ejecting a patron is not state action. In *Jackson v. Metropolitan Edison Company,* 419 U.S. 345 (1974), the United States Supreme Court set forth the following test for state action:

. . . the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that

the action of the latter may be fairly treated as that of the State itself.

*Id.* at 351.

Mr. Staino would establish the nexus by pointing out that the racing association is closely regulated by the Commission, a state agency. Because a private corporation is licensed and pervasively regulated by the state does not make its actions "state action" meaning that those actions must comport with the requirements of the Fourteenth Amendment to the Constitution. In *Jackson v. Metropolitan Edison Company,* the Supreme Court held that the action of a partial monopoly, a highly regulated utility company, in terminating service to a customer did not constitute state action.

Here the action complained of was taken by a utility company which is privately owned and operated, but which in many particulars of its business is subject to extensive state regulation. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. . . . [Citation omitted.] Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so.

419 U.S. at 350.

Moreover, the fact that a private party follows a procedure outlined in a state statute does not convert the private action into state action. This contention was raised and disposed of in *Jackson v. Metropolitan Edison Company* in which the plaintiff argued that the termination of utility service in a manner approved by the public utility commission constituted state action:

Respondent's exercise of the choice allowed by state law where the initiative comes from it and not from the State does not make its action in

doing so 'state action' for purposes of the Fourteenth Amendment.

419 U.S. at 357.

Mr. Staino has not argued that Eagle Downs in conducting race meetings at Keystone Race Track is exercising a power traditionally exclusively reserved to the state nor that there is a symbiotic relationship between the state and the racing association as is present when a private corporation leases its facilities from the state. The only case cited by Staino in his brief in support of his argument that the ejection in the instant case constituted state action is *Jacobson v. New York Racing Association, Inc.*, 33 N.Y.2d 144, 350 N.Y.S.2d 639, 305 N.E.2d 765 (1973). *Jacobson* is inapposite for several reasons. First, Jacobson was not a patron, but an owner and trainer of horses, *i.e.* a licensee. Also, the exclusion of Jacobson was by the New York Racing Association (NYRA), a non-profit racing association which is incorporated under New York statute for the express purpose of owning and operating New York's racing facilities pursuant to a franchise granted by New York's racing commission. Thus, the relationship between the NYRA and the state of New York is symbiotic in nature. The New York court of appeals in *Jacobson* distinguished the facts before it from the facts in *Madden v. Queens County Jockey Club*, 296 N.Y. 249, 72 N.E.2d 697 (1947), *cert. den.*, 332 U.S. 761 (1947) in which the common law right of an operator of a race track to exclude a patron without cause provided the exclusion is not based on race, creed, color, or national origin was upheld, and held that Jacobson was entitled to judicial review of the NYRA's actions. While the decisional law of the State of New York is not binding on this Court, we note that in *Presti v. New York Racing Association, Inc.*, 46 App. Div. 387, 363 N.Y.S.2d 24 (1975), citing *Jacobson*, the court reaffirmed the rule first stated in *Madden*

that the NYRA could eject an unlicensed person without cause.

We conclude that the Commonwealth of Pennsylvania is not sufficiently connected with Eagle Downs' action in ejecting Mr. Staino so as to make Eagle Downs' conduct in doing so attributable to the state for purposes of the Fourteenth Amendment.

In any event, contrary to Mr. Staino's third argument, Mr. Staino has no constitutional right to a seat at the race track denial of which by state action would entitle him to the procedural protections of the Fourteenth Amendment. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972). Mr. Staino would assert he has a property right to a seat at the race track. The Supreme Court in *Roth* defined a property right as a security interest which a person has acquired in a specific benefit.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .

*Id.* at 577. As stated previously, the statutory law of Pennsylvania accords no property right to a seat at a race track to a patron. Mr. Staino's abstract desire or unilateral expectation of a right to be a patron cannot translate into a constitutionally protected right. The

Court of Appeals for the sixth circuit in *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736 (1980), addressed the question whether a patron at an Ohio race track had been deprived of a constitutional right when he was excluded from the race track. The court stated that Rodic had no property interest in attending races at Thistledown since there was no federal law creating a general right to be admitted to race tracks and Ohio law permitted race tracks to admit and exclude whom they pleased, so long as the exclusion was not founded on race, creed, color, or national origin.

Mr. Staino cited four cases from foreign jurisdictions in support of his argument that an individual has a constitutional right to be a patron at a privately-owned race track; each of the cases is clearly distinguishable from the instant case, and does not support Mr. Staino's claim.[2]

---

[2] Mr. Staino cites: *Bonomo v. Louisiana Downs, Inc.*, 337 So.2d 553 (1976); *Pacific Turf Club v. Cohn*, 104 Cal.2d 371, 231 P.2d 527 (1951); *Orloff v. Los Angeles Turf Club*, 36 Cal.2d 734, 227 P.2d 449 (1951); and, *Narragansett Racing Association v. Mazzaro*, 116 R.I. 354, 357 A.2d 442 (1976). In *Bonomo*, the Louisiana appellate court held that barring of bookmakers from the race track was a proper way of maintaining the public's confidence in horse racing and pari-mutuel betting and thus was not arbitrary or capricious or against public policy or constitutional principles. In *Cohn* and *Orloff*, patron ejections by private tracks were overturned by the California appellate courts because California had abrogated the common law right of the race track owner to eject a patron without cause and the ejections were not in compliance with the statute permitting ejections only for certain enumerated reasons. In *Narragansett*, the Supreme Court of Rhode Island held that a race track operator could not exclude or eject a person from its premises without first establishing as a precondition to exclusion or ejectment that the person is undesirable and that his presence is inconsistent with the orderly and proper conduct of race meetings since Rhode Island had abrogated the common law rule permitting a race trace operator to exclude or eject any person without cause.

We now reach Mr. Staino's final contention that the Commission's findings and conclusions are not supported by substantial evidence of record. Initially, we would point out that Section 215 of the Act does not specifically require a hearing in the event of a patron ejection. Subsection (c), applicable to licensee ejections, however, does provide that "[t]he person refused admission or ejected shall receive a hearing before the appropriate commission, if requested, pursuant to rules and regulations adopted for that purpose by the appropriate commission and a decision rendered following that hearing." The difference in procedural due process accorded patrons and licensees can be explained by reference to our earlier discussion. Licensees, unlike patrons, have more than an abstract desire for or a unilateral expectation of admission to the race track by virtue of the license given them to exercise their occupation at the race track. Denial of admission to or ejection of a licensee thus constitutes denial of the liberty to exercise his occupation which triggers the procedural protections of the Fourteenth Amendment.

Nevertheless, despite the fact that it was not statutorily obligated to do so, the Commission scheduled a hearing at Mr. Staino's request and heard testimony from Mr. Staino and from the Director of Security for Eagle Downs. Mr. Staino now argues that the ejection is not supported in the record by clear, unequivocal evidence of his misconduct at the race track or of the detrimental effect of his presence at the race track. As we have indicated, it was not necessary for Eagle Downs to establish that Mr. Staino's ejection was for cause. If Mr. Staino had alleged he had been ejected for one of the prohibited reasons, *i.e.* his race, color, creed, sex, religion, or national origin, Eagle Downs would of course then be required to rebut the evidence Mr. Staino would present in support of his position. In the absence

of such an allegation, the Commission was not even required to question Eagle Downs' motive in ejecting Mr. Staino. The Commission did not abuse its discretion in upholding Mr. Staino's ejection and dismissing his appeal.

The facts and conclusions are supported by substantial evidence. Accordingly, we will affirm.

ORDER

AND NOW, this 1st day of July, 1986, the order of the Pennsylvania State Horse Racing Commission at No. 82-156K dated June 7, 1983 is hereby affirmed.