717 A.2d 508

Joseph P. RUDOLPH, M.D., Family Professional Center, P.C.,
a Professional Corporation and Family Professional
Center Laboratory, Appellants,

v.

PENNSYLVANIA BLUE SHIELD, a Professional
Health Service Corporation, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 17, 1997.

Decided Aug. 21, 1998.

10

Albert G. Feczko, Jr., Bethel Park, Craig E. Frischman, Pittsburgh, for Joseph P. Rudolph, M.D., Family Professional Center, P.C. and Family Professional Center.

Kevin J. McKeon, Harrisburg, for Pennsylvania Medical Soc. (Amicus Curiae).

Charles P. Falk, for Pennsylvania Blue Shield.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION ANNOUNCING JUDGMENT OF THE COURT*

FLAHERTY, Chief Justice.

When a doctor affiliated with Pennsylvania Blue Shield has been denied payment for services by a medical review committee appointed by Blue Shield, what review of the decision is permitted under the contract between the doctor and Blue Shield within the limitations set by the Pennsylvania Health Services Plan Corporations Act?

Between June 1986 and November 1987, Rudolph, a participating Blue Shield physician, and Family Professional Center, P.C., his professional corporation (hereinafter "the doctor") provided certain medical services to Blue Shield patients for which he was denied payment by Blue Shield on the grounds that the services were neither medically necessary nor cost effective. Pursuant to the Pennsylvania Health Services Plan Corporations Act, 40 Pa.C.S. § 6301 et seq. and the contract entered into between the doctor and Blue Shield, the doctor submitted his claim to a medical review committee appointed by Blue Shield. On November 3, 1987 the committee denied the claims and ordered the doctor to repay $26,005, which it found had been improperly paid. On December 30, 1987 the doctor filed a contract action in the Court of Common Pleas of Allegheny County, and on March 20, 1992 the court ordered

that the case be heard by a panel of physician arbitrators. On February 15, 1994 the panel entered an award that Blue Shield must return the $26,005 which the Blue Shield medical review committee had ordered the doctor to repay, and also awarded the doctor $75,000 for other medical services. The trial court confirmed the award and after adding interest, it entered judgment against Blue Shield for $110,580.30.

Blue Shield appealed to the Superior Court, claiming that the trial court lacked subject matter jurisdiction to review the decision of the medical review committee. The Superior Court vacated the judgment of the trial court, holding that an award of a professional health corporation's dispute review committee, promulgated pursuant to 40 Pa.C.S. § 6342(c), is not subject to de novo review, although it may be reviewed on the due process issues of lack of notice, opportunity to be heard, fraud or misconduct. One dissenting judge would allow de novo review of the medical review committee's award on the due process ground that the committee, a majority of which were directors or members of the corporation, was not impartial. We granted allocatur in order to provide guidance on the question of what judicial review is available, if any, of the award of a medical review committee which conducted its adjudication pursuant to the contract between the parties and the Professional Health Services Plan Corporation Act, 40 Pa.C.S. § 6301 et seq. (hereinafter "the regulatory act").

Section 6324(c) of the regulatory act, titled "Rights of health service doctors," provides

All ... disputes ... relating to the professional health services rendered by health service doctors ... shall be considered and *determined only by* health service doctors as selected in a manner prescribed in the bylaws of the professional health service corporation.

Blue Shield's bylaws provide:

Section 1. Review Committees. All matters, disputes or controversies arising out of the relationship between the Corporation and doctors of medicine ... shall be considered, *acted upon, disposed of* and determined by the appro-

priate one of the two Review Committees hereinafter referred to.

Section 2. Medical Review Committee. There shall be a Medical Review Committee consisting of at least five (5) members, each of whom shall be appointed by the Chairman of the Board of Directors of the Corporation and each of whom shall serve until his successor is appointed. A majority of the members of the Medical Review Committee shall be doctors who are either members of the Board of Directors of the Corporation or members of the Corporation.

Bylaws, Article X, Sections 1, 2. (Emphasis added.)

The contract between the doctor and Blue Shield provides: Participating Doctors Agreement with Pennsylvania Blue Shield

I, the undersigned doctor of medicine duly licensed to engage in practice under the applicable laws of the Commonwealth of Pennsylvania, in consideration of being registered by Pennsylvania Blue Shield ... as a Participating Doctor, do hereby agree as follows:

I will perform services for Blue Shield subscribers, make reports to Blue Shield concerning such services and accept compensation therefore, as provided for in the Blue Shield Regulatory Act, as heretofore or hereafter reenacted or amended, and the Bylaws [and] the applicable rules and regulations....

In sum, the doctor agrees to abide by the regulatory act and the bylaws of Blue Shield in making claims for services. The regulatory act, in turn, provides that the medical review committee, which decides claims made by the doctor, will be selected in a manner prescribed by Blue Shield's bylaws. The agreement, the bylaws, and the regulatory act are silent on whether the doctor's claims are reviewable beyond the medical review committee.

The majority in the Superior Court held that the phrases "determined only by," "acted upon," and "disposed of" mean that the committee award is not subject to review, for such phrases contemplate finality in the committee's decision.

However, as a matter of due process, the majority implicitly would allow judicial review on the due process issues of "notice and the opportunity to be heard in an orderly proceeding adopted to the nature of the case," and explicitly would allow judicial review in a case involving an allegation of fraud or other misconduct inherent to the proceeding. The dissenter in the Superior Court, as indicated above, would allow de novo review in this case because, in the dissenter's view, due process also requires an impartial tribunal, which was not present in this case because the committee selection process was inherently unfair.

█ This court has held that "the requirement of due process of law extends to administrative as well as judicial proceedings...." *Commonwealth v. Cronin,* 336 Pa. 469, 473, 9 A.2d 408, 410 (1939). Since the medical review committee is formed and functions pursuant to the terms of the regulatory act, it is a creature of the state, and like an administrative agency, is subject to due process review. The question then becomes the nature of the due process that is required in this setting.

On the one hand, it is plain that the purpose of the regulatory act is to put medical claim review decisions in the hands of experts, i.e., physicians. It is less clear whether this forum of experts is intended to be the only forum. Neither the regulatory act nor the contract states that the medical review committee is the sole and exclusive forum. Regardless of the exclusivity of the forum, however, it would be absurd to conclude that the legislature would have contemplated an inherently unfair forum.

█ The majority of the Superior Court is correct that due process requires that a person aggrieved by the award of a medical review committee is entitled to judicial review for notice and the opportunity to be heard in an appropriate forum and for fraud or other misconduct. But it is axiomatic that due process also requires that the forum be fair and impartial. Without that, the guarantee of notice, a hearing, and the right to be heard would be no more than an illusion.

■ In this case, pursuant to the bylaws of Blue Shield, a majority of the medical review committee was composed of members of the board of directors or what the corporate bylaws terms "members of the corporation." By definition, such a panel is not impartial. Those who decided the case were either directors or members of the corporation against which the claim was made.

■ Since this panel was not, by definition, impartial, the doctor was entitled to some sort of review which could provide appropriate relief. If the bylaws of Blue Shield were written to include the possibility of an unbiased panel, a remand for a new hearing before a reconstituted and impartial panel would have been appropriate. In this case, however, the bylaws provide only for the creation of a per se biased panel. A remand for another medical review hearing before another panel, therefore, would necessarily have repeated the original error. For this reason, the trial court was correct in determining that the doctor was entitled to a de novo hearing in the court of common pleas on the merits of his claim.

Accordingly, the order of the Superior Court is reversed and the judgment of the Court of Common Pleas is reinstated.[1]

NIGRO, J., files a concurring opinion.

ZAPPALA, J., files a dissenting opinion in which CASTILLE, J., joins.

NIGRO, Justice, concurring.

I concur in the result of the Majority Opinion. I write separately because I find that judicial review of the findings of the Medical Review Committee is not grounded in due process, but, rather, the unconscionability of the contract provisions providing for no review other than the Medical Review Committee.

---

1. We do not address the question of whether judicial review is available to the doctor in the absence of a due process violation, for that question need not be reached on the facts of this case.

The dissenting opinion properly observes that the due process protections afforded by the Fourteenth Amendment to the U.S. Constitution can only be invoked when the action complained of may be fairly said to be that of the state. There is no protection afforded for merely private conduct, even though discriminatory or wrongful. *Pennsylvania Medical Providers Ass'n v. Foster*, 136 Pa.Cmwlth. 232, 582 A.2d 888, 893 (1990). Furthermore, it has long been recognized that "state action" requires "a sufficiently close nexus between the State and the challenged action ... so that the action may be treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 360, 95 S.Ct. 449, 458, 42 L.Ed.2d 477 (1974). This Commonwealth has therefore held that the actions of even highly regulated industries, such as utilities and insurance, do not constitute state action simply by virtue of the body of legislation under which they operate. *Id.* at 350, 95 S.Ct. at 453. It is only when comportment with a specific state regulation compels the private entity to act in derogation of the Fourteenth Amendment that obeisance to such directive becomes state action. *Id.* at 357, 95 S.Ct. at 456. *See also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Murphy v. Harleysville Mutual Ins. Co.*, 282 Pa.Super. 244, 422 A.2d 1097 (1980).

The Professional Health Services Plan Corporations Act, 40 Pa.C.S. § 6328 et seq., regulates health insurers such as Blue Shield, a private, non-profit corporation. The Act requires that disputes relating to the professional health services rendered by physician providers "shall be considered and determined only by the health service doctors as selected in a manner prescribed in the bylaws of the professional health service corporation." 40 Pa.C.S. § 6324(c). The fact that state regulation refers such disputes to Blue Shield's bylaws does not alone convert the actions of Blue Shield into that of the state. *Foster*, 582 A.2d at 893. Thus the due process protections of the Fourteenth Amendment are not applicable

to the reimbursement review process afforded provider physicians who contract with Blue Shield.

The standard contract between Blue Shield and its participating physicians requires that, in exchange for being registered as a Blue Shield provider, the physician agrees to be governed by the Regulatory Act and the bylaws of Blue Shield. Insurance contracts such as this are therefore generally viewed as contracts of "adhesion." *Bishop v. Washington,* 331 Pa.Super. 387, 400, 480 A.2d 1088, 1094 (1984). Under such a contract, the parties are usually not of equal bargaining power and the weaker party must adhere to the terms of a form contract which are not negotiable. *Id.* In other words, its terms are not bargained for but rather dictated by the insurer. *Antanovich v. Allstate Ins. Co.,* 507 Pa. 68, 87, 488 A.2d 571, 581 (1985). Not every such contract is necessarily unconscionable. Once a contract is deemed to be one of adhesion, its terms must be analyzed to determine whether the contract as a whole, or specific provisions of it, are unconscionable. *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 608 A.2d 1061 (1992).

The doctrine of unconscionability is both a statutory and a common law defense to the enforcement of an allegedly unfair provision in a contract. *Wagner v. Estate of Rummel,* 391 Pa.Super. 555, 561, 571 A.2d 1055, 1058 (1990) *alloc. denied,* 527 Pa. 588, 588 A.2d 510 (1991). Furthermore, whether a contract or clause is unconscionable is a question of law for the court. *Bishop,* 331 Pa.Super. at 399, 480 A.2d at 1094. This Court has adopted the definition of unconscionability articulated by Judge Skelly Wright in *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445 (D.C.Cir.1965):

> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.

*Witmer v. Exxon Corp.,* 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981).

The bylaws of Blue Shield, which provide that disputes regarding reimbursements between the corporation and the provider physician be determined by a Medical Review Committee, have the appearance of "fairness" because a majority of the Committee must be doctors, resembling a "peer review" body. However, a closer examination reveals that each of the members of the Committee is appointed by the chairman of the Board of Directors of Blue Shield and a majority of those members must themselves be members of the Board of Directors or members of the corporation. The Committee therefore has every reason to be biased in favor of the company whose chairman appointed it and in keeping with its fiduciary responsibility to the financial interests of the corporation. If the bylaws are interpreted as to rule out de novo judicial review of such disputes, requiring a provider physician to agree to such terms is oppressive and therefore unconscionable since meaningful review is merely illusory.

This Court has explained the circumstances under which we may determine whether public policy is violated by a particular insurance clause:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy....

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal ... Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.

*Hall v. Amica Mutual Ins. Co.,* 538 Pa. 337, 347–48, 648 A.2d 755, 760 (1994) (citations omitted). Such a violation of public policy is instantly present.

Blue Shield's contract of adhesion presents provider physicians with no choice but to accept that their adversary is also the final adjudicating authority. As a consequence, the provider physician is often "stuck" with making treatment decisions based, not in the best medical interests of the patient, but on likelihood of reimbursement. Thus, an unconscionable contract, driven substantially by economics favorable to Blue Shield, may ultimately result in the physician's being hamstrung in providing the best possible medical care for the patient. I believe that such is contrary to the "beliefs of the people and ... their conviction of what is just and right and in the interests of the public weal ..." and, as such, requires this Court to interpret the intent of The Professional Health Services Plan Corporations Act to include impartial judicial review of the decisions of Blue Shield's self-serving Medical Review Committee. I therefore concur in the result of the Majority Opinion and would affirm the decision of the trial court on the aforementioned basis.

ZAPPALA, Justice, dissenting.

Because I disagree with the majority's conclusion that the medical review committee is "a creature of the state, and like an administrative agency, is subject to due process review," op. at 510, I dissent.

It is axiomatic that the due process protections afforded by the Fourteenth Amendment to the United States Constitution apply only to "state action" and not to private conduct.[1] In *Adler v. Montefiore Hospital Association of Western Pennsylvania,* 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied,* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974), citing *Burton v.*

---

**1.** The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

*No State ... shall ... deprive any person of life, liberty, or property without due process of law.*

(Emphasis added).

*Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), we noted:

> In *Burton,* the United States Supreme Court held that essentially private conduct does not do violence to the Fourteenth Amendment (in that case Equal Protection Clause) unless the state has become involved to some significant extent. The amount of involvement must be measured by the facts of each particular case.

*Adler,* 453 Pa. at 69, 311 A.2d at 639.

Here, the majority, in concluding that procedural due process applies to the proceedings of the medical review committee, relies on the fact that the medical review committee "is formed and functions pursuant to the terms of the regulatory act." Op. at 510. However, the mere fact that a certain area is highly regulated is not sufficient by itself to establish that a private party covered by such regulation acts under color of state law. See *Jackson v. Metropolitan Edison,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (the action of a partial monopoly, a highly regulated utility company, in terminating service to a customer did not constitute state action). In order to demonstrate state action, there must also be a showing that the state ordered the private party to act in a specific manner. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The appropriate inquiry in determining whether state action can be imputed to a private entity is whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *Jackson,* 419 U.S. at 351, 95 S.Ct. 449.

The parties to this action are Blue Shield, a private, non-profit, professional health services corporation, and former participating Blue Shield physicians and professional corporations. Pursuant to Section 6324(c) of the Professional Health Services Plan Corporation Act, 40 Pa.C.S. § 6324(c), disputes relating to the professional health services rendered by health service doctors "shall be considered and determined only by the health service doctors as selected *in a manner prescribed in the bylaws of the professional health service corporation.*"

(Emphasis added). Article X of Blue Shield's Bylaws provides that all disputes "shall be considered, acted upon, disposed of and determined by the [Medical Review Committee]." The parties to this matter entered into a private contract whereby Appellants agreed that they would "perform services ... and accept compensation therefore, as provided for in the ... Regulatory Act ... and [Appellee's] Bylaws."

The Legislature, in enacting the Regulatory Act, did not specify in what manner professional health service corporations are to resolve disputes relating to the professional health services rendered by health service physicians. To the contrary, the Legislature specifically left it to the discretion of professional health service corporations, through their bylaws, to establish how disputes should be resolved. Section 6324(c) in no way directs, limits or guides professional health service corporations concerning the manner in which they are to structure their bylaws regarding dispute resolution.

Given that professional health service corporations are free to set forth, in their bylaws, whatever dispute resolution scheme they deem appropriate, without direction from the Legislature, i.e., the state, there is not a sufficiently close nexus between the state and the challenged action for due process to be implicated. See, e.g., *Staino v. Pennsylvania State Horse Racing Commission*, 98 Pa.Cmwlth. 461, 512 A.2d 75, 77 (1986), wherein the court noted:

> Because a private corporation is licensed and pervasively regulated by the state does not make its actions "state actions" meaning that those actions must comport with the requirements of the Fourteenth Amendment to the Constitution....
>
> Moreover, the fact that a private party follows a procedure outlined in a state statute does not convert the private action into state action.

Based on the foregoing, and contrary to the majority, I conclude that the proceedings of the medical review committee are not subject to the requirements of due process. Accordingly, I would affirm, for different reasons, the Superior

Court's order vacating the judgment of the common pleas court.

CASTILLE, J., joins this dissenting opinion.