Sharon OSTROFF, Individually and as Power of Attorney for Lillian Restine, Plaintiff,

v.

**ALTERRA HEALTHCARE CORPORATION,** Defendant.

Civil Action No. 05–6187.

United States District Court, E.D. Pennsylvania.

June 7, 2006.

Thomas A. Lynam, III, Ginsburg & Associates, Philadelphia, PA, for Plaintiff.

Allison C. Novin, Peter C. Kennedy, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Philadelphia, PA, for Defendant.

### *ORDER AND MEMORANDUM*

DUBOIS, District Judge.

### *ORDER*

**AND NOW,** this 7th day of June, 2006, upon consideration of defendant's First Motion to Compel Arbitration & Stay Proceedings (Document No. 8, filed February 17, 2006), plaintiff's Response in Opposition re First Motion to Compel Arbitration and Stay Proceedings (Document No. 9, filed March 3, 2006), plaintiff's Supplemental Response in Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings (Document No. 14, filed March 22, 2006), and the Reply Brief of Defendant Alterra Healthcare Córporation in Further Support of its Motion for Stay and to Compel Arbitration (Document No. 15, filed March 27, 2006), **IT IS ORDERED** that defendant's First Motion to Compel Arbitration & Stay Proceedings is **DENIED.**

**IT IS FURTHER ORDERED** that a scheduling conference will be conducted in due course. Discovery may proceed in the meanwhile.

### MEMORANDUM

Sharon Ostroff, individually and as power of attorney for Lillian Restine, her mother, has filed suit against Alterra Healthcare Corporation ("Alterra") for personal injuries suffered by Restine while she was a resident at an assisted living facility operated by Alterra. Defendant has moved to compel arbitration pursuant to an agreement signed by plaintiff Ostroff. Because the agreement is procedurally and substantively unconscionable, defendant's motion to compel arbitration is denied.

## I. BACKGROUND

### A. *Facts*

The following facts are taken from plaintiff's Complaint and from an affidavit submitted by Ostroff in her Response in Opposition re First Motion to Compel Arbitration and Stay Proceedings.[1] Ostroff Aff., Pl.Ex. A.

In December 2004, Restine moved into Alterra Wynwood of Northampton Manor ("Alterra Wynwood"), an assisted-living facility in Richboro, Pennsylvania. Ostroff Aff. ¶¶ 2, 5. Previously Restine lived at another facility, Brighton at Lakeside, in Langhorne, Pennsylvania. *Id.* ¶ 2. Brighton announced in November 2004 that it was closing for financial reasons. *Id.* ¶ 3. Because plaintiff Ostroff expected area facilities to fill quickly with displaced Brighton residents, she immediately sought to relocate her mother. *Id.* ¶ 4.

In October 2005, Restine was 87 years old and leading a fairly active life, which included physical activities such as bowling, arts and crafts, and independent shopping. Compl. ¶ 6. She resided in a unit at Alterra Wynwood with one roommate. *Id.* ¶ 8. The incident giving rise to this suit occurred on October 9, 2005. *Id.* ¶ 9. On that date, Restine was standing in her room, directly behind the door, when she was knocked to the ground by one of defendant's employees, who opened the door of the room without knocking. *Id.* ¶¶ 9–11. Restine was left on the floor, without medical attention, in great pain until an ambulance arrived forty minutes later. *Id.* ¶ 13. Restine suffered a broken hip and numerous other physical and mental injuries, including memory loss. She will never walk again. *Id.* ¶¶ 11, 17.

### B. *The Alterra Residency Agreement*

On the day plaintiff Ostroff was moving Restine into Alterra Wynwood, she was presented with the Alterra Residency Agreement ("Residency Agreement"). Ostroff Aff. ¶ 8. Plaintiff Ostroff expressed a desire to have the 31–page document reviewed by an attorney before she signed it. *Id.* ¶ 9. In response, she was told by one of defendant's employees that it would be "pointless" to have an attorney review the Residency Agreement because defendant would not accept any changes. *Id.* ¶ 10. Furthermore, plaintiff was told that Restine could not move into Alterra Wynwood until the Residency Agreement was signed. *Id.* Plaintiff then signed the Residency Agreement as the "Responsible Party" for Restine, the "Resident." Alterra Residency Agreement, Pl.Ex. B (hereinafter "Residency Agreement").

---

1. In deciding a motion to compel arbitration, a court may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party. *Bertram v. Beneficial Consumer Discount Co.,* 286 F.Supp.2d 453, 456 (M.D.Pa.2003).

The Residency Agreement provides that "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement or the Resident's stay at Alterra, excluding any action for eviction ... shall be submitted to binding arbitration, as provided below." Residency Agreement at (V)(A)(1). Claims are to be submitted to one arbitrator, agreed upon by the parties, who is independent of all parties, witnesses, and legal counsel. *Id.* at (V)(A)(4)-(5). Discovery in the arbitration proceeding is governed by the Pennsylvania Rules of Civil Procedure, but on a shortened timeline, and with only depositions of experts allowed. *Id.* at (V)(A)(6). Defendant is allowed 115 days to designate expert witnesses, while the resident party is only allowed 65 days. *Id.* The arbitrator's decision is final and binding, with no right to appeal. *Id.* at (V)(A)(10). Costs and fees are divided equally among the parties, unless the resident is indigent. *Id.* at (V)(A)(11). Non-economic damages, such as pain and suffering, are capped at $350,000. *Id.* at (V)(B)(2)(b).

### C. *Arguments of the Parties*

Plaintiff Ostroff, who is Restine's daughter, filed suit individually and as power of attorney for Restine against defendant, the owner and operator of Alterra Wynwood.[2] Compl. ¶ 7. Plaintiff alleges that Restine's injuries were caused by the negligent, careless, and reckless acts of defendant and its agents. *Id.* ¶ 16. After plaintiff filed suit, defendant moved to compel arbitration pursuant to the Residency Agreement. In plaintiff's response, she argues that the Residency Agreement is void because it is unconscionable and for several other reasons—lack of mutual assent and violations of state law and public policy.

Because the Court concludes that the arbitration clause and the Residency Agreement are unconscionable, it will not address the additional arguments.

## II. LEGAL STANDARD

### A. *Enforcing Arbitration Clauses*

Motions to compel arbitration are reviewed under the standard for summary judgment found in Fed.R.Civ.P. 56(c). *Bellevue Drug Co. v. Advance PCS,* 333 F.Supp.2d 318, 322 (E.D.Pa.2004); *Berkery v. Cross Country Bank,* 256 F.Supp.2d 359, 364 n. 3 (E.D.Pa.2003). The court must consider all evidence presented by the party opposing arbitration and construe all reasonable inferences in that party's favor. *Bellevue Drug,* 333 F.Supp.2d at 322.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–10, requires federal courts to enforce written agreements to arbitrate disputes. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ("[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements."); *Dluhos v. Strasberg,* 321 F.3d 365, 369 (3d Cir.2003). The FAA evinces the "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 104 (3d Cir.2000) ("The FAA establishes a strong federal policy in favor of compelling arbitration over litigation.").

Section 2 is the primary substantive provision of the FAA. *Moses H. Cone Mem'l*

---

**2.** Defendant is a Delaware corporation with its principal place of business in Wisconsin. Compl. ¶ 2. Plaintiff Ostroff and Restine are both Pennsylvania residents, and plaintiff seeks damages in excess of $75,000. *Id.* ¶¶ 1, 5. Therefore, the Court has diversity jurisdiction. 28 U.S.C. § 1332.

*Hosp.*, 460 U.S. at 24, 103 S.Ct. 927. It provides, in relevant part:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The effect of the section [2] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S.Ct. 927.

▮▮▮ A court cannot direct parties to arbitration unless the agreement to arbitrate is valid. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir.2003); *Bellevue Drug*, 333 F.Supp.2d at 323. "An agreement to arbitrate may be unenforceable based on a generally applicable contractual defense, such as unconscionability." *Alexander*, 341 F.3d at 264. The power of courts to declare arbitration provisions unconscionable does not contradict the FAA or its liberal policy favoring arbitration. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir.1999). So long as state law defenses, including unconscionability, are generally applied to all contracts, and not just to arbitration clauses, federal courts may enforce them under the FAA. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir.2001). "While the FAA expresses

a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, *but not more so.*" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir.2003) (emphasis original) (internal quotations and citations omitted).

▮▮▮ Before considering the merits of a defense raised to avoid arbitration, the Court must determine whether the issue is one for a court or an arbitrator to resolve. *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 876 (11th Cir.2005). The Supreme Court has distinguished between challenges to the contract in general and challenges to the arbitration provision itself, most famously in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and most recently in *Buckeye Check Cashing, Inc. v. Cardegna*, —— U.S. ——, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). A challenge to the validity of the contract as a whole must be decided by an arbitrator. *Buckeye*, 126 S.Ct. at 1210; *Prima Paint*, 388 U.S. at 404, 87 S.Ct. 1801. A challenge that is specific to the arbitration clause itself may be adjudicated by the Court. *Buckeye*, 126 S.Ct at 1210; *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801.

### B. *Unconscionable Contracts*

▮▮▮ Under Pennsylvania law, there must be both procedural and substantive unconscionability in order to void an arbitration provision or a contract in general. *Harris*, 183 F.3d at 181; *Bellevue Drug*, 333 F.Supp.2d at 332 ("Pennsylvania law also recognizes that unconscionability has two elements: procedural and substantive.").

▮▮▮ "Procedural unconscionability" describes the process by which the parties entered into the contract. *Metalized Ce-*

*ramics for Electronics, Inc. v. Nat'l Ammonia Co.*, 444 Pa.Super. 238, 663 A.2d 762, 767 (1995) (Olszewski, J., concurring). It has been defined by the Pennsylvania Supreme Court to mean the "absence of meaningful choice on the part of one of the parties." *Witmer v. Exxon Corp.*, 495 Pa. 540, 434 A.2d 1222, 1228 (1981). Procedural unconscionability is generally found where the agreement is a contract of adhesion. *Alexander*, 341 F.3d at 265. A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a "take it or leave it" basis. *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 276 (3d Cir.2004); *Rudolph v. Pa. Blue Shield*, 553 Pa. 9, 717 A.2d 508, 511–12 (1998) (Nigro, J., concurring). Often the other party to the contract is told that the terms of the contract are non-negotiable. *Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 608 A.2d 1061, 1068 (1992). There may also be conditions which prevent the consumer from obtaining the product or services except by acquiescing to the contract. *Dabney v. Option One Mortg. Corp.*, 2001 WL 410543, at *4 (E.D.Pa. Apr. 19, 2001); *see also Denlinger*, 608 A.2d at 1068 (refusing to find contract of adhesion where plaintiff was not an "exclusive supplier of rare or much-sought-after goods"). A contract of adhesion is not necessarily unenforceable, however; the party challenging it must also demonstrate substantive unconscionability. *Parilla*, 368 F.3d at 276.

 "Substantive unconscionability" is found where the terms of an arbitration provision or contract "unreasonably favor" the party with the greater bargaining power. *Witmer*, 434 A.2d at 1228; *Denlinger*, 608 A.2d at 1068. Numerous factors may make an arbitration provision substantively unconscionable, including severe restrictions on discovery, *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 387–88 (6th Cir.2005); high arbitration costs borne by one party, *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216–17 (3d Cir.2003); limitations on remedies, *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670–71 (6th Cir.2003); and curtailed judicial review, *Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582, 614 (D.S.C.1998). Essentially, an arbitration provision is substantively unconscionable if it "create[s] an arbitration procedure that favors one party over another." *Johnson v. West Suburban Bank*, 225 F.3d 366, 378 n. 5 (3d Cir.2000).

Under Pennsylvania law, an arbitration provision also may be substantively unconscionable if it reserves access to the courts for one party, but requires the other party to arbitrate all disputes. In *Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643 (Pa.Super.2002), the Pennsylvania Superior Court addressed an arbitration provision which required mortgagors to arbitrate all issues involving more than $15,000, while the mortgagee retained the right to enforce its repayment rights or commence foreclosure in the courts. *Id.* at 660. The court held that, "under Pennsylvania law, the reservation by CitiFinancial of access to the courts for itself to the exclusion of the consumer creates a presumption of unconscionability." *Id.* at 665. In so ruling, the Superior Court recognized that its decision was in conflict with a Third Circuit case, *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir.1999). In *Harris*, construing an arbitration provision similar to the one at issue in *Lytle*, the Third Circuit held that "the mere fact that Green Tree retains the option to litigate some issues in court, while the Harrises must arbitrate all claims does not make the arbitration agreement unenforceable."

*Id.* at 177–78, 183.[3]

## III. ANALYSIS

First, the Court must determine whether it or an arbitrator must decide plaintiff's unconscionability challenge. While plaintiff's procedural unconscionability argument applies to the contract as a whole, plaintiff's substantive unconscionability argument goes to specific provisions within the arbitration clause. Because plaintiff's challenge is directed to the arbitration provision itself, the Court has the power to decide this issue. *Harris,* 183 F.3d at 179; *see also Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 791 (8th Cir.1998) (concluding that, under *Prima Paint,* a challenge to an arbitration clause as unconscionable must be decided by the court); *Benoay v. Prudential–Bache Sec., Inc.,* 805 F.2d 1437, 1441 (11th Cir.1986) ("If ... [plaintiff] has alleged fraud, duress, or unconscionability with respect to the arbitration clause itself, then judicial consideration of these issues is mandated before arbitration of the state claims can be compelled.").

### A. *The Residency Agreement is Procedurally Unconscionable*

 Plaintiff argues that the Residency Agreement is a contract of adhesion because of the conditions under which plaintiff Ostroff signed the Agreement.

To restate, plaintiff Ostroff was presented with the Agreement on the day she was moving her mother, Restine, into Alterra Wynwood. She requested that she be given an opportunity to have an attorney review the Agreement before she signed it, but was told such review was "pointless" because defendant would not accept any changes to the Agreement. She was also told that unless she signed the Agreement that day, her mother would be unable to move into Alterra Wynwood.

The Court concludes that the Residency Agreement was a contract of adhesion. Plaintiff asked to review the Agreement with an attorney, but was told that it was "futile to even ask about modifying the terms and conditions." *Denlinger,* 608 A.2d at 1068. Given the circumstances, plaintiff had no choice but to sign the Residency Agreement; otherwise her elderly mother would have had no place to live.[4] Essentially, plaintiff was told by defendant, who was in a superior bargaining position, to "take it or leave it." *Parilla,* 368 F.3d at 276. This is a classic situation creating a contract of adhesion. Because the element of procedural unconscionability is "generally satisfied" by a contract of adhesion, the Court concludes that the Residency Agreement between plaintiff and defendant was the result of procedural unconscionability. *Id.*

---

3. Because of the conflict between *Lytle* and *Harris,* the Third Circuit has recently certified the following question of law to the Pennsylvania Supreme Court:

 Whether the arbitration agreement under consideration in this case, which exempts from binding arbitration certain creditor remedies, while requiring the submission of other claims to arbitration is unconscionable under Pennsylvania law, as suggested by *Lytle v. CitiFinancial Services, Inc.,* 810 A.2d 643 (2002) (one-sided agreement presumptively unconscionable) (*contra Harris v. Green Tree Fin. Corp.,* 183 F.3d 173 (3d Cir.1999)), and is therefore unenforceable?

*Salley v. Option One Mortg. Corp.,* 2005 WL 3724871, at *3 (3d Cir. Oct. 20, 2005).

4. Plaintiff Ostroff was concerned about the number of vacancies in area assisted living facilities with the closing of the facility where her mother had previously resided, Brighton at Lakeside. Ostroff Aff. ¶ 4. Essentially, plaintiff Ostroff believed—with good reason—that defendant was an "exclusive supplier of rare or much-sought-after goods." *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 608 A.2d 1061, 1068 (1992)

## B. *The Residency Agreement Is Substantively Unconscionable*

 The Court next turns to the question of whether the arbitration provisions in the Residency Agreement present substantive unconscionability. Based on the discovery restrictions imposed on plaintiff and the fact that defendant retains access to the courts while requiring plaintiff to arbitrate all claims, the Court concludes that the arbitration provision is substantively unconscionable.

### 1. Restrictions on discovery

In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court explicitly held that limitations on discovery do not necessarily render an arbitration provision invalid. *Id.* at 31, 111 S.Ct. 1647. However, the Court also noted that "there has been no showing in this case that the ... discovery provisions ... will prove insufficient to allow ... claimants such as [plaintiff] a fair opportunity to present their claims." *Id.*

The discovery provisions in the instant case are more restrictive than the provisions in *Gilmer*, which allowed for document production, information requests, depositions, and subpoenas. 500 U.S. at 31, 111 S.Ct. 1647. While plaintiff in this case is allowed "permissible discovery per the Pennsylvania Rules of Civil Procedure," she is only allowed to depose defendant's expert witnesses. Residency Agreement at (V)(A)(6). This restriction means that plaintiff cannot depose any of defendant's employees or any of the other residents of Alterra Wynwood. Under the facts of this case, the only individuals who know exactly how Restine was injured are employees of Alterra Wynwood, and possibly other residents of the facility.[5] Without depositions, plaintiff will be limited to obtaining statements from other Alterra Wynwood residents on a voluntary basis. With respect to defendant's employees, Pennsylvania Rule of Professional Conduct 4.2 prohibits plaintiff's lawyer from communicating with any employee who might establish the liability of the defendant. *McCarthy v. Southeastern Pa. Transp. Auth.*, 772 A.2d 987, 993 (Pa.Super.2001) (stating that employees are protected from *ex parte* communication if the employee's status "could impute liability to the company"); *see also Lennen v. John Eppler Machine Works, Inc.*, 1997 WL 566078, at *2 (E.D.Pa. Sept. 5, 1997) (finding that lawyer violated Rule 4.2 by contacting general manager of defendant corporation); *Cagguila v. Wyeth Lab., Inc.*, 127 F.R.D. 653, 654 (E.D.Pa. 1989) (interpreting Rule 4.2 to find that "organization members whose conduct involves the matter in representation should not be the object of *ex parte* communications"). In fact, under *Cagguila*, plaintiff's lawyer could not speak to any employee of defendant "whose conduct involves the matter in representation." 127 F.R.D. at 654. If plaintiff cannot depose other residents of Alterra Wynwood or defendant's employees, she will be forced to proceed to arbitration with only limited information as to how the accident in question occurred.

 Plaintiff's limited information will put her at a distinct disadvantage in arbitration, which also distinguishes this case from *Gilmer*, because plaintiff's discovery limitations may well deny her a "fair opportunity to present [her] claims." *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647. Without depositions of defendant's employees and other residents of Alterra Wynwood,

---

5. Plaintiff Restine may know how she was injured, but she has suffered short- and long-term memory loss since her accident and a significant advancement in dementia. Compl. ¶ 17.

plaintiff will have a much more difficult time proving numerous allegations in the Complaint, including the following:

- Restine was injured when one of defendant's employees entered her room without knocking or announcing her presence and struck plaintiff with a heavy door, Compl. ¶ 16(b)-(c);

- Defendant failed to create proper policies and procedures for its employees regarding entering residents' rooms, *Id.* ¶ 16(a); and,

- Defendant violated numerous federal regulations by not providing a resident environment free of accident hazards, failing to adequately supervise Restine, failing to provide a safe resident environment, and failing to properly train its staff, *Id.* ¶¶ 16(d), (e), (h), (i).

Other courts have found arbitration provisions substantively unconscionable in part because of limitations on discovery. *See, e.g., Walker,* 400 F.3d at 387 ("[T]he limited discovery that the ... forum provides could significantly prejudice employees or applicants.") (internal citation omitted); *Domingo v. Ameriquest Mortg. Co.,* 70 Fed.Appx. 919, 920 (9th Cir.2003) (arbitration provision voided in part because of limits on discovery); *Geiger v. Ryan's Family Steak Houses, Inc.,* 134 F.Supp.2d 985, 996 (S.D.Ind.2001) (arbitration provision voided in part because discovery only allowed one deposition as of right); *Hooters of America,* 39 F.Supp.2d at 614 (arbitration provision voided in part because of limits on discovery). "Thus, one requirement for an enforceable arbitration agreement is more than minimal discovery be permitted." *Booker v. Robert Half Int'l, Inc.,* 315 F.Supp.2d 94, 103 (D.D.C.2004); *see also Hoffman v. Cargill, Inc.,* 968 F.Supp. 465, 475 (N.D.Iowa 1997) ("Although arbitration proceedings may, and often do, provide much more limited discovery procedures than is common in regu-

lar court proceedings, a party must be provided a fair opportunity to present its claims.").

Cases upholding arbitration provisions that include limits on discovery, including *Gilmer,* have noted that the discovery provisions did not prevent the plaintiffs from presenting their claims, or that the discovery provisions were more generous than those in the instant case. *See, e.g., Alamo Moving Storage v. Mayflower Transp.,* 46 Fed.Appx. 731, 2002 WL 1973482, at *2 (5th Cir.2002) (arbitration provision not unconscionable because "the clause, for example, does not limit Alamo's discovery while granting Mayflower unlimited discovery"); *Carter v. Countrywide Credit Indus., Inc.,* 362 F.3d 294, 298–99 (5th Cir.2004) ("We agree with the district court's conclusion that there is no evidence here that the limits placed on discovery will have such an effect on the ... appellants' individual cases."); *Ndanyi v. Rent–A–Center, Inc.,* 2004 WL 3254516, at *4 (E.D.La. Dec.11, 2004) (arbitration provision not unconscionable where arbitrator allowed to expand discovery); *Curry v. MidAmerica Care Found.,* 2002 WL 1821808, at *6 (S.D.Ind. June 4, 2002) (arbitration provision, which allowed for numerous depositions of each side, not found unconscionable).

While procedural and substantive unconscionability are two separate requirements, the unmistakable procedural unconscionability in this case gives the Court another basis for concluding that the limits on discovery are substantively unconscionable. The Supreme Court in *Gilmer* justified the discovery limits in part because the party agreeing to arbitration "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." 500 U.S. at 31, 111 S.Ct. 1647 (internal quotation omitted). In this case, however, plaintiff's

"agreement" to arbitrate was the result of a contract of adhesion. Plaintiff Ostroff did not realize that she was trading away her right to court procedures for the "simplicity, informality, and expedition of arbitration," because she was forced to sign the 31–page document under pressure and without review by an attorney.

### 2. Reserving access to the courts

The Residency Agreement requires plaintiff to submit "any and all claims or controversies arising out of or in any way relating to this Agreement or the Resident's stay at Alterra" to binding arbitration, but reserves the right for defendant to bring an action for eviction in court. Residency Agreement at (V)(A)(1). As discussed above, the Third Circuit has held that "the mere fact that [one party] retains the option to litigate some issues in court, while the [other party] must arbitrate all claims does not make the arbitration agreement unenforceable." *Harris,* 183 F.3d at 183 (emphasis added). While the Pennsylvania Superior Court disagreed with *Harris* in *Lytle,* this Court is bound by *Harris. Choice v. Option One Mortg. Corp.,* 2003 WL 22097455, at *8 (E.D.Pa. May 13, 2003) ("[A] federal district court is bound by Third Circuit precedent on state law issues unless the Pennsylvania Supreme Court subsequently says otherwise."). However, *Harris* is distinguishable from this case.

What distinguishes the instant case from *Harris* is the fact that this Court is not *merely* faced with an arbitration provision that reserves access to the court for one party while prohibiting it for the other party. *Harris,* 183 F.3d at 183. In this case, the Court is also faced with an arbitration provision that limits discovery so severely that it impedes plaintiff in presenting her claims. These two features of the arbitration provision demonstrate that defendant crafted an arbitration procedure that favored it over residents. *Cf. Johnson v. West Suburban Bank,* 225 F.3d 366, 378 n. 5 (3d Cir.2000). For that reason, the arbitration clause in the Residency Agreement is substantively unconscionable.

## IV. CONCLUSION

The Court recognizes that arbitration agreements must be "rigorous[ly] enforced." *In re Mintze,* 434 F.3d 222, 229 (3d Cir.2006). Nevertheless, the Court will not enforce a substantively unconscionable arbitration clause in a contract of adhesion. Defendant's motion to compel arbitration is thus denied.