**Worman v. FedEx Ground Package System Inc.**

*John J. Keller,* for plaintiff.
*Ellen P. Milcic,* for defendant.

JOHNSON, *J.,* April 28, 2005—The plaintiff filed the within suit against the defendant for breach of contract and wrongful termination.

Before the court for consideration is the defendant's motion to dismiss/motion to compel arbitration seeking an order dismissing the within civil action and compelling the parties to submit to arbitration according to the terms of the arbitration clause of a written employment contract between the parties on the bases that: (1) a valid agreement to arbitrate exists between the parties; and that (2) the dispute involved is within the scope of the arbitration provision. For the following reasons, the court will grant the defendant's motion.

## I. RELEVANT FACTUAL BACKGROUND

The parties agree that hearing exhibit P-1 is the subject written employment contract. It is an employment contract in which the plaintiff is the employee and is identified in the contract as "contractor," and the defendant is the employer and is identified in the contract as "FHD" (agreement).

The agreement contains an arbitration clause, which reads as follows:

*"9.3 Arbitration of asserted wrongful termination. In the event FHD acts to terminate this agreement* (which

acts shall include any claim by contractor of constructive termination) *and contractor disagrees with such termination or asserts that the actions of FHD are not authorized under the terms of this agreement, then each such disagreement (but no others) shall be settled by arbitration* in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) in accordance with the terms and conditions set forth in addendum 7 to this agreement." (emphasis added)

Addendum 7 to the agreement as follows (section 9.3 and addendum 7 shall be referred to as the arbitration provision):

"FHD Standard Contractor Operating Agreement Arbitration

"The arbitration of contract termination shall be instituted and conducted in accordance with the following terms and conditions:

"(1) Contractor must mail written notice of a demand for arbitration to FHD and to the AAA by certified mail within 90 days of the occurrence of the claimed wrongful termination. Failure to mail written notice of a demand for arbitration within such 90-day period and comply with all procedural requirements set forth in the Commercial Arbitration Rules of the AAA shall constitute an absolute bar to the institution of any proceedings and a waiver of the claimed wrongful termination. The copy of the demand sent to the American Arbitration Association shall be addressed to Four Gateway Center, Suite 419, Pittsburgh, PA 15222-1207, with a request that the demand be forwarded to the appropriate AAA regional office.

"(2) The dispute shall be heard and determined by a single arbitrator, chosen pursuant to the procedures of the AAA.

"(3) The arbitrator shall set the date, time, and place for each hearing, and shall schedule the hearing and make his or her determination in an expeditious manner. Neither party shall be entitled to written or deposition discovery from the other, except with respect to damages.

"(4) *As to any dispute or controversy which under the terms hereof is made subject to arbitration, no suit at law or in equity based on such dispute or controversy shall be instituted by either party hereto, other than a suit to confirm, enforce, vacate, modify or correct the award of the arbitrator as provided by law; · provided, however, that this clause shall not limit FHD's right to obtain any provisional remedy including, without limitation, injunctive relief, writ for recovery or possession or similar relief from any court of competent jurisdiction, as may be necessary in FHD's sole subjective judgment to protect its property rights.* (emphasis added)

"(5) The arbitrator shall have the authority only to conclude whether the termination of contractor was within the terms of this agreement, to determine damages if required to do so under this subparagraph, and to provide for the division of the AAA fees and AAA assessed expenses of the arbitration between the parties; provided, however, each party shall bear the cost of attorneys, expert witnesses, or other expenses incurred by that party, and the arbitrator shall have no authority to allocate or apportion such costs. If the arbitrator con-

cludes the termination was within the terms of this agreement, the termination shall be effective on the date specified in the notice of termination from FHD to contractor. *If the arbitrator concludes the termination was not within the terms of this agreement, then, at the option of FHD:* (1) the contractor shall be reinstated within a reasonable period of time, not to exceed 90 days from the company's receipt of the arbitrator's decision, and in that event shall be entitled to damages equal to the arbitrator's determination of what contractor's net earnings (after payment of all expenses which are borne by contractor pursuant to this agreement) would have been during the period between the date of termination and the date of reinstatement; or (2) contractor shall nevertheless be terminated, and, in that event, shall be entitled to damages equal to the arbitrator's determination of what contractor's net earnings (after payment of all expenses which are borne by contractor pursuant to this agreement) would have been during the period between the date of termination to the last day of the term of this agreement (without any renewals). *Contractor shall have no claim for damages in any other amount, and the arbitrator shall have no power to award punitive or any other damages.* (emphasis added)

"(6) The arbitrator shall provide the parties with only a written determination of the outcome of the arbitration, without accompanying opinion, and shall have no authority to alter, amend or modify any of the terms and conditions of this agreement, and further, the arbitrator may not enter any award which alters, amends or modifies the terms of conditions of this agreement in any form or manner.

"(7) Judgment upon the award of the arbitrator may be rendered in any court having jurisdiction thereof."

## II. DISCUSSION

Because arbitration is a matter of contract, the court must determine, as a matter of law, whether an express agreement exists between the parties to arbitrate their dispute. *Smith v. Cumberland Group Ltd.,* 455 Pa. Super. 276, 284, 687 A.2d 1167, 1171 (1997). When a party to an agreement seeks to avoid arbitration, as the plaintiff does in the within case, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision. *Id.* If a valid arbitration agreement exists between the parties and the plaintiff's claims fall within the scope of the agreement, the controversy must be submitted to arbitration as a matter of law. *Id.;* see also, *Circuit City Stores Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302 (2001) (Court upheld arbitration provision contained in employment application/contract.). We will now address these two issues separately.

### (A) *Whether a Valid Agreement To Arbitrate Exists Between the Parties*

The initial burden of proof to establish, by a preponderance of the evidence, the existence of a valid contract between the parties is on the party alleging the existence of the contract, which in this case is the defendant. The defendant has sustained that burden since the parties have agreed that exhibit P-1 is a true and correct copy of the

agreement. On its face, this agreement appears valid—it has been signed by the parties and contains all of the necessary elements of a contract. The defendant has met its burden of proof.

Pennsylvania law on the enforceability of agreements to arbitrate is in accord with federal law and requires enforcement of arbitration provisions as written, permitting such provisions to be set aside only for generally recognized contract defenses such as duress, illegality, fraud or unconscionability. *Lytle v. Citifinancial Services Inc.*, 810 A.2d 643 (Pa. Super. 2002).

Once the party alleging the existence of a contract has met its burden of proof, as the defendant has done here, the burden of proof shifts to the party alleging that the contract is invalid, which in this case is the plaintiff. The plaintiff's threshold argument against enforcement of the arbitration provision of the agreement is that he is exempt from being required to go to arbitration, and that therefore, any agreement to do so is invalid. He argues, in his brief in opposition to defendant's motion to dismiss, that his status as an employee of the defendant engaged in the business of transporting goods in interstate commerce places him within the exclusion provision of the Federal Arbitration Act (FAA) which exempts employment contracts of transportation workers from being required to go to arbitration. The plaintiff cites *Circuit City Stores Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302 (2001), for this proposition. However, the U.S. Supreme Court, in the *Circuit City* case clarifies that section 1 of the FAA "precludes interpreting the exclusion provision to defeat the language of section 2 of the FAA (which 'compels' judicial enforcement of arbitration

agreements 'in any . . . contract evidencing a transaction involving commerce.' " *Circuit City,* 532 U.S. 105, 121 S.Ct. at 1304) as to all employment contracts. The court goes on to explain that the section 1 exclusion must be narrowly construed and must be read as exempting from the FAA only employment contracts of transportation workers. *Circuit City,* 532 U.S. 105, 121 S.Ct. at 1305, 1306. The plaintiff is not a transportation worker as anticipated by the FAA, and therefore is not exempt from the arbitration requirement under the agreement.

In further opposition to the defendant's motion, the plaintiff argues that the arbitration provision is unconscionable because the agreement unreasonably favors the defendant and the plaintiff lacked meaningful choice in accepting it, and therefore it is invalid. The plaintiff bears the burden of proving this allegation of unconscionability, by a preponderance of the evidence. Unconscionability requires a two-fold determination: (1) that the contractual terms are unreasonably favorable to the drafter, and (2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions. *Lytle,* 810 A.2d at 658-59; *McNulty v. H&R Block Inc.,* 843 A.2d 1267, 1273 (Pa. Super. 2004). We will now analyze these two issues separately.

### 1. Contract Terms Unreasonably Favorable to the Drafter

The plaintiff alleges that the arbitration provision is "permeated beyond recovery with the infected brush of unconscionability" for several reasons, including: (a) the arbitration clause is oppressive; (b) 90 days to apply for

arbitration is unreasonable; (c) defendant reserves access to the courts for itself, but precludes plaintiff from access; (d) defendant has the sole and exclusive right to determine the nature of remedies, including whether or not the employee shall be granted reinstatement; (e) plaintiff is prohibited from obtaining punitive, compensatory, or consequential damages; (f) plaintiff has no discovery rights except limited rights on damages; and (g) the arbitrator does not provide a written opinion. Each of these reasons will now be analyzed individually as follows:

### (a) *The arbitration clause is oppressive*

### (i) Each party must pay its own costs and 50 percent of the arbitration costs

The plaintiff first argues that the arbitration clause is oppressive because it requires each party to incur the costs of its own expenses, as well as for half of the fees and expenses due to the American Arbitration Association, making the arbitration cost prohibitive to him. The plaintiff quotes, "*Lytle* makes it clear that if the costs associated with arbitration of a single claim would operate to preclude a claimant from pursuing a remedy, then the enforcement of the provision would be unconscionable." *McNulty,* 843 A.2d at 1273 (citing *Lytle,* 810 A.2d at 667-68); see also, *Parilla v. IAP Worldwide Services VI Inc.,* 368 F.3d 269, 278-79 (2004) (striking down arbitration provisions similar to the one at bar that place economic burdens on the weaker party); *Alexander v. Anthony Int'l L.P.,* 341 F.3d 256, 263 (2003) (finding that a clause that requires each party to assume its own

legal fees is oppressive to the employee and unduly favorable to the employer, making it "substantially unconscionable").

In *Lytle,* the court acknowledged that the plaintiff, in arguing that the cost of the arbitration process is unconscionable, may offer evidence that the costs associated with the arbitration of a claim would operate to preclude them from pursuing alleged wrongs by the defendant. The *Lytle* court adopts the reasoning of *Mendez v. Palm Harbor Homes Inc.,* 111 Wash. App. 446, 45 P.3d 594 (2002). The *Mendez* court asserts that:

"Avoiding the public court system to save time and money is a laudable societal goal. But avoiding the public court system in a way that effectively denies citizens access to resolving everyday societal disputes is unconscionable. Goals favoring arbitration of civil disputes must not be used to work oppression. When the goals given in support of contract clauses like this are used as a sword to strike down access to justice instead of as a shield against prohibitive costs, we must defer to the overriding principle of access to justice." *Lytle,* 810 A.2d at 667-68 (quoting *Mendez,* 111 Wash App. at 462-65, 45 P.3d at 603-605).

In *Mendez,* the plaintiff would have had to spend over $2,000 to attempt to exercise his rights under a contract to resolve a $1,500 dispute. This was deemed to be cost prohibitive and the court refused to enforce the arbitration provision. *Mendez,* 111 Wash App. at 465, 45 P.3d at 605. Based on *Mendez,* the court in *Lytle* vacated the lower court's order dismissing the plaintiffs' complaint and remanded the case to the trial court for the plaintiffs

to present evidence on the issue of the cost of arbitration as contrasted to court proceedings, and the ability of consumers to obtain relief. See *Lytle,* 810 A.2d at 668; *Parilla,* 368 F.3d 269. Likewise, in *Alexander,* 341 F.3d 256, 269 (3d Cir. 2003), the court held that the "loser pays" arbitration provision was unconscionable as to the particular plaintiffs where the plaintiffs presented evidence of the cost of arbitration, and the court accepted the facts that they needed their employment and were supporting their children in college.

In the case at bar, the arbitration provision is similar to those of the above cases in that it provides that each party incur its own expenses for "attorneys, expert witnesses, or other expenses incurred by that party," as well as for the arbitrator to "provide for the division of the AAA fees and AAA assessed expenses of the arbitration," without "authority to allocate or apportion such costs." See plaintiff's exhibit 1, FHD Standard Contractor Operating Agreement, addendum 7, paragraph 5. Plaintiff estimated that the arbitration procedure's cost to him will be approximately $5,000. See plaintiff's supplemental memorandum of law in opposition to preliminary objections of FedEx Home Delivery, pp. 6-7. Plaintiff's supplemental memorandum of law also points to the fact that plaintiff was unemployed in 2004 and his wife worked as a paralegal "for a modest income." See plaintiff's supplemental memorandum in opposition to preliminary objections of FedEx Home Delivery, p. 7.

However, in one important respect, the case at bar is distinguishable from each of the above cases: the plaintiffs in the above cases each provided some measure of evidence to support their claims that the respective arbi-

tration provisions, as applied to their particular circumstances, were oppressive. The courts made their decisions on the basis of evidence presented by the plaintiffs, as the plaintiffs bore the burden of proving their claims challenging the respective arbitration provisions, just as the plaintiff does here. For example, in *Mendez,* the court found that it was cost prohibitive for a plaintiff to pay $2,000 for only a $1,500 recovery after receiving prima facie proof of the costs of arbitration. *Mendez,* 111 Wash. App. at 462-65, 45 P.3d at 603-605. In *Lytle,* although the court did not make a final determination as to the merits of the plaintiff's claim that the cost of arbitration was prohibitive, it remanded the case, asserting that the plaintiffs were "to be afforded an opportunity to *present evidence* on the issue of the cost of arbitration as contrasted to court proceedings." *Lytle,* 810 A.2d at 668. (emphasis added) Finally, although the *Alexander* court acknowledged that the court is not required "to undertake detailed analyses of the household budgets of low-level employees to conclude that arbitration costs in the thousands of dollars deter the vindication of employees' claims in arbitral fora," the plaintiffs had presented, at the very least, evidence of the rates of the prospective arbitrators, thereby allowing the court to consider the evidence of specific costs and apply it to the plaintiffs' accepted circumstances. *Alexander,* 341 F.3d 256, 269 (quoting *Giordano v. Pep Boys—Manny, Moe & Jack Inc.,* 2001 WL 484360 at *6 (E.D. Pa. 2001)).

Here, the plaintiff has provided no evidence that the cost of arbitration will outweigh the plaintiff's potential recovery or that the cost of arbitration is unconscionable

as applied to the plaintiff's circumstances, in spite of having an opportunity to present such evidence at the January 14, 2005 hearing for that purpose. The court is satisfied, therefore, based on the evidence presented, that plaintiff has not met his burden of proof for his argument that the arbitration provision is oppressive because arbitration would be cost prohibitive.

(ii) The arbitration provision is an exculpatory clause

The plaintiff argues that the arbitration provision is so oppressive, it can be called an exculpatory clause. Under Pennsylvania law: "a generally valid exculpatory clause must meet the following standards before it will be interpreted so as to relieve a person of a liability that the law would otherwise impose:

"(1) contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law . . . ; (2) such contracts 'must spell out the intention of the parties with the greatest of particularity' . . . and show the intent to release from liability 'beyond doubt by express stipulation' and '[n]o inference from words of general import can establish it' . . . ; (3) such contracts must be construed with every intendment against the party who seeks the immunity from liability . . . ; (4) the burden to establish immunity is upon the party who asserts such immunity . . . ." *Princeton Sportswear Corp. v. H & M Associates,* 335 Pa. Super. 381, 386, 484 A.2d 185, 187-88 (1984) (quoting *Employers Liability Assurance Corp. Ltd. v. Greenville Business Men's Association,* 423 Pa. 288, 292-93, 224 A.2d 620, 623 (1966)).

The plaintiff, in applying *Princeton,* makes the argument that the language that precludes the plaintiff from bringing a civil action for wrongful termination against the defendant, while allowing the defendant to seek a provisional remedy in civil court, is exculpatory.

The court is not convinced by this argument. The language in the agreement does not shield the defendant from liability, which is the segment of an exculpatory clause that is unfavorable under the law, but only defines the forum in which a wrongful termination claim must be brought. Therefore, this argument is without merit.

### (b) *Ninety days to apply for arbitration is unreasonable*

The plaintiff also alleges that the 90-day filing period with the AAA is unreasonable, relying on *Alexander v. Anthony Int'l L.P.,* 41 F.3d 256 (3d Cir. 2003), for this proposition. The court, however, does not find any basis for this assertion. The *Alexander* court recognized that a provision limiting the time in which a plaintiff must bring a claim is not necessarily unfair or unconscionable, as long as the period provided is reasonable. See *Alexander,* 41 F.3d at 266. The *Alexander* court held the 30-day notice obligation to be unreasonable because "in addition to proving an apparently insufficient time to bring a well-supported claim, such an obligation prevents an employee from invoking the continuing violation and tolling doctrines." *Id.,* 41 F.3d at 267.

Such is not the situation in the case at bar, however. Under the subject arbitration provision, "contractor must mail written notice of a demand for arbitration to defen-

dant and to the AAA by certified mail within 90 days of the occurrence of the claimed wrongful termination." See plaintiff's exhibit 1, addendum 7, paragraph 1. The plaintiff has failed to convince the court that a 90-day time limit for bringing notice of a claim for wrongful termination is unreasonable. Certainly 90 days is sufficient time for a potential plaintiff to determine whether he intends to bring a claim for wrongful termination. In addition, there would be no continuing violation as his contact with the employer presumably would have ended at the time of the termination of his employment. For these reasons, the plaintiff has failed to convince the court that 90 days to apply for arbitration is unreasonable.

(c) *Defendant reserves access to the courts for itself, but precludes plaintiff from access*

The plaintiff next argues that the subject arbitration provision is unreasonably favorable to the defendant, because the defendant has reserved the right to seek any provisional remedy from the courts, while the plaintiff is denied the same access. According to the plaintiff, this is unreasonable because he might have just as much need for provisional remedies as the defendant, in order to protect his property rights. The court is not convinced that, under the circumstances, this section of the arbitration provision is unreasonable.

The relevant sections of plaintiff's exhibit 1, the FHD Standard Contractor Operating Agreement, are section 9.3 and paragraph 4 of addendum 7. Section 9.3 reads in relevant part that:

"In the event FHD acts to terminate this agreement . . . and contractor disagrees with such termination or as-

serts that the actions of FHD are not authorized under the terms of this agreement, then each such disagreement (but no others) shall be settled by arbitration . . . in accordance with the terms and conditions set forth in addendum 7 to this agreement." Plaintiff's exhibit 1, section 9.3.

Paragraph 4 of addendum 7 reads in relevant part that:

"As to any dispute or controversy which under the terms hereof is made subject to arbitration, no suit at law or in equity based on such dispute or controversy shall be instituted by any party hereto, other than a suit to confirm, enforce, vacate, modify or correct the award of the arbitrator as provided by law; provided, however, that this clause shall not limit FHD's right to obtain any provisional remedy including, without limitation, injunctive relief, writ for recovery or possession or similar relief, from any court of competent jurisdiction, as may be necessary in FHD's sole subjective judgment to protect its property rights." Plaintiff's exhibit 1, addendum 7, paragraph 4.

Under *Lytle,* unconscionability is presumed where an arbitration clause reserves the right to access the courts in a lender, while restricting a consumer's claims exclusively to arbitration, unless business realities compel such a restriction. *Lytle,* 810 A.2d at 665. The arbitration provision sections above state that only if an employee brings an action for wrongful termination, is he limited to doing so in an arbitration setting. Once the plaintiff pursued such an action, the defendant had the right to seek provisional relief to protect its property rights. The need to maintain the company's status quo, during an ongo-

ing wrongful termination suit, is a business reality. The court is satisfied that the reservation to the defendant only of access to the courts is, under these circumstances, in response to a necessary business reality. Therefore, plaintiff has not met his burden of proving that this section of the arbitration provision unreasonably favors defendant.

(d) *Defendant has the sole and exclusive right to determine the nature of remedies, including whether or not the employee shall be granted reinstatement*

The plaintiff argues next that the arbitration provision unreasonably favors the defendant because the defendant has the sole discretion to choose between two possible remedies if an arbitrator determines that a termination was outside the terms of the agreement, including whether the employee should be reinstated. Specifically, under paragraph 5 of addendum 7, if the arbitrator determines that a termination was not within the terms of the agreement, then, at the option of defendant: "(1) the contractor shall be reinstated . . . or (2) contractor shall nevertheless be terminated . . . ." See plaintiff's exhibit 1, addendum 7, paragraph 5.

It is clear to the court that the plaintiff has not met his burden of proving that this section of paragraph 5 unreasonably favors the defendant. He has provided no law directly on point to support his position and the facts fail to do so, also. If it is determined that the defendant has wrongfully terminated an employee, the company is in a better position to determine the proper relief, both in the interests of both an employee and the company, as only

it can say whether a position is still available and if the company would be able to reinstate the employee, or whether, in the alternative, it would be in the best interest of all involved to pay the employee the money due him. Therefore, the plaintiff has not met his burden of proving why this section of the arbitration provision is unreasonable, as alleged.

### (e) *Plaintiff is prohibited from obtaining punitive, compensatory, or consequential damages*

The plaintiff further argues that paragraph 5 of addendum 7 is unreasonable because it limits the available damages, by preventing an employee in a wrongful termination lawsuit, from recovering punitive, compensatory or consequential damages. The plaintiff relies on *Carll v. Terminex International Co. L.P.,* 793 A.2d 921 (Pa. Super. 2002), for this proposition. The court, however, believes such reliance is misplaced and it does not find, therefore, that the arbitration provision is unreasonably favorable for this reason.

In *Carll,* the Superior Court held that an arbitration clause between homeowners and a pest control company that limited the company's liability for personal injury and precluded the arbitrator from awarding, among other things, "special, incidental, consequential, exemplary or punitive damages," was unconscionable as against public policy. *Carll,* 793 A.2d at 924. The circumstances of *Carll,* however, involved an arbitration provision that left an arbitrator without authority to award damages for physical injuries due to the defendant's negligence in the application of "ultrahazardous pesticides in a residential

setting." *Id.* It was this "absence of the authority to afford relief for personal injury in this consumer contract that [the court found] contrary to public policy." *Id.* The *Carll* court further explained that only a limitation of available damages for injury to the person creates a presumption of unconscionability. *Id.* at 925. In fact, the *Carll* court recognized that, in a commercial setting, a provision that establishes repair and replacement as the exclusive remedy, and excludes special, indirect and consequential damages, is generally valid and enforceable. *Id.* at 924.

Applying the reasoning of *Carll,* the court is satisfied that, because the limiting language of addendum 7, paragraph 5 does not restrict recovery for personal injuries, it is not presumed to be unconscionable as against public policy. Rather, under the circumstances, the type of recovery permitted by paragraph 5 is appropriate. Therefore, plaintiff has failed to prove that the limiting section of addendum 7, paragraph 5 is unreasonably favorable to defendant and unconscionable.

### (f) *Plaintiff has no discovery rights except limited rights on damages*

The plaintiff enumerates the fact that he has no discovery rights except limited rights on damages as a reason why the arbitration provision is "fatally flawed," however, he fails to explain this assertion or provide any legal support for it. See plaintiff's brief in opposition to defendant's motion to dismiss, pp. 13-14, item (7). Therefore, the plaintiff has failed to meet his burden of proof and the court finds that this enumerated reason for find-

ing the arbitration provision unreasonable is without merit.

### (g) *The arbitrator does not provide a written opinion*

Finally, the plaintiff asserts that the fact that the arbitrator is not required to provide a written opinion "makes it more difficult to file a corrective action or other action with the court" and also makes it "impossible to say whether plaintiff's misrepresentation claims were considered . . . ." See plaintiff's brief in opposition to defendant's motion to dismiss, p. 14, items (8) and (9). Again, the court is not persuaded that the plaintiff has met his burden of proving why this is unreasonable, as he only lists this reason once and without any legal support or explanation. Further, it would appear that this section of the arbitration provision affects both parties equally, and therefore does not favor either side. Therefore, the court finds that this assertion of the plaintiff is without merit.

We now move to the second prong of the unconscionability test.

### (2) Whether Plaintiff Lacked Meaningful Choice in Accepting the Arbitration Provision

The plaintiff argues that the agreement is one of adhesion because he lacked meaningful choice in accepting the agreement as a whole, including the arbitration provision, specifically. Under Pennsylvania law, an adhesion contract is a standard form contract prepared by one party, to be signed by the other party in a weaker posi-

tion, usually a consumer, who has little choice about the terms. *Lytle,* 810 A.2d at 658; *McNulty,* 843 A.2d at 1273. However, a finding that a contract is one of adhesion does not require that the court find the contract unconscionable. *Lytle,* 810 A.2d at 658.

The court is not convinced, however, that the agreement is a contract of adhesion. Under Pennsylvania law, "an employment contract is not a contract of adhesion, even when an employee is told to 'sign or be terminated' " or merely because a party alleges that he entered into an agreement "which he would not have entered if his financial circumstances were more secure." *Swisher v. Caterpillar Incorporated,* 65 D.&C.4th 32, 42 (2003) (quoting *Stebok v. American General Life and Accident Insurance Company,* 715 F. Supp. 711 (2003)). In *Swisher,* as in the case at bar, the plaintiff argued that his employment contract was one of adhesion because his employer occupied a better bargaining position. *Id.* The *Swisher* plaintiff admitted, however, "that he voluntarily decided to work for [his employer], that he was pleased to be offered the job, that he was happy with [his employer] and was treated fairly by the company." *Id.* at 43. The court concluded that such facts do not support an accusation that the plaintiff lacked a meaningful choice in signing his employment agreement.

Likewise, in the case at bar, the plaintiff had a choice in whether to secure the employment and he admitted, under oath, that "he knew the arbitration provisions existed," regardless of whether he fully appreciated the rights allegedly relinquished within. While there may not have been discussions or negotiations regarding the agreement, neither was the plaintiff precluded from seek-

ing advice, refusing to sign the agreement or declining to accept the position. As set forth in *Swisher,* the circumstances under which the plaintiff agreed to the subject employment agreement do not support an allegation that it is a contract of adhesion. Because the plaintiff fails to support his allegation that he lacked a meaningful choice in signing the agreement because it is a contract of adhesion, he has failed to meet his burden of proving the second prong of the test for unconscionability. The court finds, therefore, that the agreement, and specifically the arbitration provision that is a part thereof, are not unconscionable as a matter of law and the agreement is valid.

### (B) *Whether the Dispute Involved Is Within the Scope of the Arbitration Provision*

Count II of the plaintiff's complaint asserts a cause of action for wrongful termination against the defendant. The within case is the type specifically anticipated by the agreement as being subject to arbitration, and is therefore clearly addressed in the arbitration provision. See plaintiff's exhibit 1, FedEx Home Delivery Standard Contractor Operating Agreement, section 9.3 and addendum 7. Therefore, this dispute is within the scope of the arbitration provision and the second of the two requirements to establish the existence of an express agreement between the parties is met.

### III. CONCLUSION

Based on the foregoing discussion, the court finds that (1) a valid agreement to arbitrate exists between the par-

ties; and that (2) the dispute involved is within the scope of the arbitration provision. Therefore, defendant's motion to dismiss/motion to compel arbitration is granted and the within civil action is dismissed and the parties are compelled to submit to arbitration according to the terms of the arbitration provisions in the employment agreement.

## ORDER

And now, April 28, 2005, upon consideration of defendant's motion to dismiss/motion to compel arbitration, after hearing thereon and for the reasons set forth in the accompanying opinion, it is ordered that defendant's motion is granted and the within civil action is dismissed and the parties are compelled to submit to arbitration according to the terms of the arbitration provisions in the employment agreement.