John Robert OPENSHAW, Plaintiff,

v.

FEDEX GROUND PACKAGE SYSTEM, INC., Defendant.

Case No. SACV 10–00689–CJC(SSx).

United States District Court, C.D. California, Southern Division.

Aug. 16, 2010.

Joshua M. Wolff, Irvine, CA, for Plaintiff.

Jonathan C. Arnett, Maria O. Gutierrez, Barbara J. Miller, Morgan Lewis and Bockius LLP, Irvine, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

CORMAC J. CARNEY, District Judge.

### I. INTRODUCTION

Defendant FedEx Ground Package System, Inc. ("FedEx") moves to compel Plaintiff John Robert Openshaw to arbitrate his claims for wrongfully terminating his written agreement with FedEx to serve as a small package pick-up and delivery driver. FedEx's agreement with Mr. Openshaw contains several arbitration provisions that are incredibly favorable to FedEx. It has a provision drastically reducing the time by which Mr. Openshaw must file a claim for wrongful termination

against FedEx or forever waive the claim. It has a provision significantly limiting Mr. Openshaw's ability to conduct discovery and recover damages. And it has a provision imposing significant arbitration expenses on Mr. Openshaw and prohibiting the arbitrator from issuing a written opinion. FedEx's arbitration provisions are unconscionable. The arbitration provisions are unreasonably favorable to FedEx and unacceptably detrimental to Mr. Openshaw. The arbitration provisions deny Mr. Openshaw of the right to resolve his termination claim in a fair manner. Accordingly, FedEx's motion to compel arbitration is DENIED.[1]

## II. BACKGROUND

FedEx is a national provider of small package information, transportation, and pick-up and delivery services. Mr. Openshaw has a B.A. from California State University of Fullerton and has previously served as a business consultant. (Openshaw Decl. ¶ 2.) Through his consulting, he learned about the opportunity to serve as a delivery contractor for FedEx. (Openshaw Decl. ¶ 3.) Prior to his dealings with FedEx, he had no experience negotiating with large, sophisticated business entities. (Openshaw Decl. ¶ 8.)

Mr. Openshaw invested his time and life savings into becoming a FedEx contractor.[2] (Openshaw Decl. ¶ 3.) He purchased the business from another FedEx Ground delivery contractor for $250,000, to be paid over five years, and assumed two truck leases at $900 per month for remaining terms of four years and one year, respectively. (Openshaw Decl. ¶ 4.) He also purchased a new FedEx truck for the non-negotiable price of $77,000, which required a $6,100 down payment plus $900 per month for six years. (Openshaw Decl. ¶ 5.) In addition, Mr. Openshaw purchased a used van for $7,500, which had to be painted and to which the FedEx logo needed to be affixed. (Openshaw Decl. ¶ 5.) He also infused the business with $12,000 in capital to cover initial payroll and start up expenses. (Openshaw Decl. ¶ 5.)

After he had invested substantial time and financial resources into becoming a FedEx contractor, FedEx's regional manager, Judy Western, presented Mr. Openshaw with a "sample" of the Pick–Up and Delivery Contractor Operating Agreement ("COA") and told him that it was non-negotiable. (Openshaw Decl. ¶ 6.) A few days later, Ms. Western summoned Mr. Openshaw to the Palm Springs Terminal to sign the agreement. (Openshaw Decl. ¶ 7.) He was never given any opportunity to question or negotiate any of the COA's terms. (Openshaw Decl. ¶¶ 7, 8.)

Under the COA, Mr. Openshaw would be required to submit to arbitration should he wish to assert a claim of wrongful termination against FedEx. (Def.'s Req. Judicial Notice ("DRJN"), Ex. A § 12.3.) The COA included a number of provisions that were favorable to FedEx. First, the COA had a very short statute of limitations for Mr. Openshaw to file an arbitration demand. The COA required:

> Written notice of a demand for arbitration must be mailed by Contractor to FedEx Ground and to the AAA by certified mail within 90 days of the occurrence of the claimed wrongful termination. Failure to mail written notice of a demand for arbitration within such 90

**1.** FedEx also moves to dismiss either the entire complaint or portions of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to arbitrate. Though FedEx has styled portions of its motion as a motion pursuant to Rule 12(b)(6), FedEx is really seeking an order compelling the parties to arbitrate.

**2.** Federal courts are empowered by the Federal Arbitration Act to receive evidence on the issue of whether the parties have entered into a valid arbitration agreement. 9 U.S.C. § 4.

day period and comply with all procedural requirements set forth in the Commercial Arbitration Rules of the AAA shall constitute an absolute bar to the institution of any proceedings and a waiver of the claimed wrongful termination.

(DRJN, Ex. A § 12.3(a).) The COA also curtailed discovery, with the following limitation:

Neither party shall be entitled to written or deposition discovery from the other, except with respect to damages.

(DRJN, Ex. A § 12.3(c).) The COA also imposed significant financial hurdles to initiating and participating in arbitration. Specifically, the COA dictated:

The arbitrator shall have the authority only to conclude whether the termination of Contractor was within the terms of this Agreement, to determine damages if required to do so under this subparagraph, and to provide for the division of the AAA fees and AAA assessed expenses of the arbitration between the parties; provided, however, each party shall bear the cost of attorneys, expert witnesses, or other expenses incurred by that party, and the arbitrator shall have no authority to allocate or apportion such costs.

(DRJN, Ex. A § 12.3(e).) The COA also limited Mr. Openshaw's ability to recover damages incurred as a result of a wrongful termination:

If the arbitrator concludes the termination was not within the terms of this Agreement, then, at the option of FedEx Ground: (1) the Contractor shall be reinstated within a reasonable period of time, not to exceed 90 days from the Company's receipt of the arbitrator's decision, and in that event shall be entitled to damages equal to the arbitrator's determination of what Contractor's net earnings (after payment of all expenses which are borne by Contractor pursuant

to this Agreement) would have been during the period between the date of termination and the date of reinstatement; or (2) Contractor shall nevertheless be terminated, and, in that event, shall be entitled to damages equal to the arbitrator's determination of what Contractor's net earnings (after payment of all expenses which are borne by Contractor pursuant to this Agreement) would have been during the period between the date of termination to the last day of the term of this Agreement . . . Contractor shall have no claim for damages in any other amount, and the arbitrator shall have no power to award punitive or any other damages.

(DRJN, Ex. A § 12.3(e).) Finally, the COA prohibited the arbitrator from issuing a written opinion explaining his or her findings. Specifically, the COA provided:

The arbitrator shall provide the parties with only a written determination of the outcome of the arbitration, without accompanying opinion, and shall have no authority to alter, amend or modify any of the terms and conditions of this Agreement . . .

(DRJN, Ex. A § 12.3(f).)

Mr. Openshaw could not afford to pay an attorney to review the COA. (Openshaw Decl. ¶ 8.) He went ahead and signed the COA on May 11, 2009, clearly not understanding or appreciating the one-sided nature of the COA's arbitration provisions. (Openshaw Decl. ¶¶ 7–9.)

Just four months later, FedEx unilaterally terminated the COA. (Openshaw Decl. ¶ 9.) By this time, Mr. Openshaw was saddled with more than $346,000 in debt, which he had incurred as a result of fulfilling FedEx's requirements for the delivery contract. (Openshaw Decl. ¶ 9.) Shortly after the contract was terminated, Mr. Openshaw lost his FedEx trucks and drivers because he could not afford paying for them. (Openshaw Decl. ¶ 12.)

Mr. Openshaw, believing that his termination was wrongful, wanted to vindicate his rights and file a claim for wrongful termination. (Openshaw Decl. ¶ 10.) Since he had considerable debt and no income, Mr. Openshaw determined that he could not consult an attorney before the 90–day statute of limitations period expired. (Openshaw Decl. ¶ 10.) To avoid waiving his claim forever, Mr. Openshaw filed an arbitration claim with the American Arbitration Association ("AAA") in December 2009 as required by the COA. (Openshaw Decl. ¶ 10.) The initial filing fee was $6,000, the case service fee was $2,500. (Openshaw Decl. ¶ 11.) Mr. Openshaw was also required to pay half of the arbitrator's $300 per hour fee, which totaled to $4,200, and could be higher if the hearing extends beyond one day. (Openshaw Decl. ¶ 11.)

In March 2010, Mr. Openshaw sought the services of an attorney, Joshua Wolff. (Wolff Decl. ¶ 2.) After reviewing the COA, Mr. Wolff believed that the arbitration provisions were unfairly one-sided in favor of FedEx, and he arranged a conference with the appointed arbitrator. (Wolff Decl. ¶ 5.) On April 2, 2010, the arbitrator held a preliminary conference with the parties. (Wolff Decl. ¶ 5.) Mr. Wolff raised his concern about the limited discovery that Mr. Openshaw was permitted to conduct, and he asked whether the arbitrator would level the "playing field." (Wolff Decl. ¶ 5.) The arbitrator ruled that he did not have the power to change the parties' arbitration provision and so would enforce the provision as written. (Wolff Decl. ¶ 6.) Mr. Wolff informed the arbitrator and FedEx that he would file an action to obtain a judicial determination as to the enforceability of the arbitration provision. (Wolff Decl. ¶ 6.) The arbitrator then is-

sued a scheduling order setting the arbitration for October 2010. (Wolff Decl., Ex. A.) Mr. Openshaw filed a complaint in state court that includes the following causes of action: (1) Breach of Contract; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Violation of California Unfair Practices Act; and (4) Declaratory Relief. FedEx removed the case to this Court on May 28, 2010. FedEx now moves for the Court to compel Mr. Openshaw to arbitrate his claims.

### III. ANALYSIS

#### 1. The Arbitration Provisions of the COA Are Unenforceable

Under the Federal Arbitration Act, "[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Rent–A–Center, West, Inc. v. Jackson,* —— U.S. ——, 130 S.Ct. 2772, 2779, 177 L.Ed.2d 403 (2010). "When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable...." *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1264 (9th Cir.2006) (en banc). Arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent–A–Center,* 130 S.Ct. at 2776 (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). Where an arbitration provision has been found unconscionable, "[t]he district court has the discretion under federal arbitration law ... to sever the unconscionable arbitration provision and enforce the remainder of the contract." *Nagrampa,* 469 F.3d at 1276.[3]

---

**3.** A federal court sitting in diversity looks to the law of the forum state, both as to choice-

of-law rules and for substantive law. *Kam–*

■ Under Pennsylvania law, an arbitration provision is unenforceable where it is both procedurally and substantively unconscionable. *Worldwide Underwriters Ins. Co. v. Brady,* 973 F.2d 192, 196 (3d Cir.1992) (citing *Koval v. Liberty Mut. Ins. Co.,* 366 Pa.Super. 415, 531 A.2d 487, 491 (1987)); *Ostroff v. Alterra Healthcare Corp.,* 433 F.Supp.2d 538, 542 (E.D.Pa. 2006) (citing *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 181 (3d Cir.1999)). A contract is procedurally unconscionable where "the consumer who is presented with it has no choice but to either accept the terms of the document as they are written or reject the transaction entirely." *Todd Heller, Inc. v. United Parcel Serv., Inc.,* 754 A.2d 689, 700 (Pa.Super.2000). An arbitration provision is substantively unconscionable when the terms of the arbitration provision unreasonably favor the party with the greater bargaining power. *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222, 1228 (1981).[4]

■ The most critical inquiry when determining whether a contract is procedurally unconscionable is whether one party lacked a meaningful choice to review, negotiate and sign the agreement. *Todd Heller,* 754 A.2d at 700; *Ostroff,* 433 F.Supp.2d at 542–43 (applying Pennsylvania law); *Lucey,* 2007 WL 3052997, at *4 (applying Pennsylvania law). Courts have found contracts to be procedurally unconscionable when they constitute a contract of adhesion, i.e., a contract that is "prepared by a party with excessive bargaining power and presented to the other party on a 'take it or leave it' basis." *Ostroff,* 433 F.Supp.2d at 543 (citing *Parilla v. IAP Worldwide Servs. VI, Inc.,* 368 F.3d 269, 276 (3d Cir.2004)). Mr. Openshaw had no meaningful choice here to review, negotiate and sign the COA.

Mr. Openshaw had no prior experience negotiating with sophisticated commercial entities. (Openshaw Decl. ¶¶ 4, 5, 8.) By the time he was presented with the COA, he had already invested substantial time and resources in purchasing routes, preparing a business plan, obtaining necessary trucks, hiring drivers, acquiring supplies, and emotionally committing to the contractor position. (Openshaw Decl. ¶¶ 4, 5, 8.) Ms. Western presented the sample COA as non-negotiable, and when Mr. Openshaw signed the final COA a few days later, he was not afforded an opportunity

*Ko Bio–Farm Trading Co. Ltd–Australasia v. Mayne Pharma (USA) Inc.,* 560 F.3d 935, 940 (9th Cir.2009); *Fields v. Legacy Health Sys.,* 413 F.3d 943, 950 (9th Cir.2005). Under California law, courts enforce contractual choice-of-law provisions unless the chosen state does not have a substantial interest in the transaction or the application of the chosen state's law would be contrary to a fundamental policy of the state with a greater interest in the issue. *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 464–65, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (Cal.1992). Here, the COA contains a choice-of-law provision that dictates that the COA "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." (DRJN, Ex. A § 28.) Though he does reserve his right to contest the applicability of Pennsylvania law in future proceedings, Mr. Openshaw does not challenge the appropriateness of applying Pennsylvania law. (Opp'n Mot. Dismiss at 10 n. 8.)

4. Mr. Openshaw posits that FedEx is collaterally estopped from asserting that the arbitration agreement is enforceable because a federal district court in New Jersey has already determined that the arbitration provision is unconscionable, and this ruling was affirmed by the Third Circuit. *Lucey v. FedEx Ground Package Sys., Inc.,* Case No. 06–3738(RMB), 2007 WL 3052997 (D.N.J. Oct. 18, 2007), *aff'd in part and reversed in part on other grounds,* 305 Fed.Appx. 875 (3d Cir.2009). The Court disagrees. Whether an agreement is unconscionable is highly dependent on the unique facts of a case and, in any event, other courts have come out differently than the court in *Lucey* and have enforced the COA's arbitration provisions.

to question or negotiate any of its terms or addenda. (Openshaw Decl. ¶¶ 6, 7.) He also had limited financial resources and could not afford to consult with an attorney. (Openshaw Decl. ¶¶ 6–7.) Indeed, Mr. Openshaw had no meaningful choice but to sign the COA, lest he risk losing the life savings that he had spent acquiring the business.

Nevertheless, FedEx argues that the COA is not procedurally unconscionable because Mr. Openshaw knew that he would need to enter into a COA with FedEx and could and should have reviewed the COA before purchasing the business. FedEx's argument misses the point. FedEx presented the COA to Mr. Openshaw. The COA was FedEx's standard form contract. None of the terms were drafted by Mr. Openshaw. If Mr. Openshaw wanted to be a FedEx contractor, he had to sign the COA. It was a take-it-or-leave-it situation. This was procedurally unconscionable.[5]

■■■■■ The COA was also substantively unconscionable. A contractual provision is substantively unconscionable when the contractual terms unreasonably favor the drafter. *Worman v. FedEx Ground Package Sys., Inc.*, 76 Pa. D. & C.4th 292, 300 (Pa.Com.Pl.2005). "Numerous factors may make an arbitration provision substantively unconscionable, including severe restrictions on discovery, high arbitration costs borne by one party, limitations on remedies, and curtailed judicial review. Essentially, an arbitration provision is substantively unconscionable if it creates an arbitration procedure that favors one party over another." *Ostroff*, 433 F.Supp.2d at 543 (internal citations omitted). Here, there are several arbitration provisions in the COA that unreasonably favor FedEx.

The first unconscionable arbitration provision of the COA is the 90–day statute of limitations provision. This provision only gives the contractor 90 days to file an arbitration demand or the wrongful termination claim is forever waived. Such a short fuse must be analyzed in context and with the practical realities of the situation in mind. The contractor has just lost his or her job. The contractor has also lost a considerable capital investment and may be in dire financial straits. FedEx does not have to provide the contractor with any explanation for the termination. Most, if not all, of the evidence concerning FedEx's termination is in the possession of FedEx. Needless to say, the contractor is in an extremely vulnerable position and must be given enough time to gather the relevant information, consult with a lawyer should he or she desire, and then build a well-supported claim for wrongful termination. Pennsylvania law actually provides the contractor with four years to file such a claim, but FedEx's arbitration provision provides the contractor with just 90 days to do so. 42 PA.C.S.A. § 5525(a)(8); *Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc., L.P.*, 577 Pa. 14, 842 A.2d 334 (2004). That is simply not enough time, especially when one considers that the contractor has lost his or her job, has little or no money, and is understandably emotional and upset.[6]

**5.** While FedEx's contention that Mr. Openshaw had some time to review the "sample" COA may be relevant to whether the provision is procedurally unconscionable, it does not change the Court's conclusion here. This is because Mr. Openshaw was presented with the sample COA on a take-it-or-leave-it basis after he had already invested hundreds of thousands of dollars in the business and was financially and emotionally committed to the

position. Just because Mr. Openshaw could review the COA does not mean he had a meaningful choice to negotiate and accept its terms.

**6.** This would be true whether Mr. Openshaw had filed his claim within 90 days or not. FedEx's argument that Mr. Openshaw has complied with the provision and so experienced no damage as a result of the 90–day

The 90–day provision is even more troubling because it is one-sided. Contractors have just 90 days to file a claim for wrongful termination, but FedEx is limited only by Pennsylvania's four-year statute of limitations. 42 PA.C.S.A. § 5525(a)(8). If FedEx wants to file a claim for unauthorized termination, it has ample time to gather the evidence necessary to build a well-supported claim. FedEx contends that the COA permits contractors to terminate with 30 days notice and limits FedEx's damages for unauthorized termination without notice to $1,000, so the provision is not unfairly one-sided. This argument misses the mark. FedEx contractors have a statute of limitations that is drastically shortened to just three months, yet FedEx's statute of limitations for unauthorized termination or other breach of contract is four years. This is unduly favorable to FedEx.

The next unconscionable provision is the COA's discovery provision. This provision provides that "[n]either party shall be entitled to written or deposition discovery from the other, except with respect to damages." (DRJN, Ex. A § 12.3(c)). A limited discovery provision must not be so restrictive that it "will prove insufficient to allow [the Plaintiff] a fair opportunity to present [his] claims." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 30–31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The COA's provision here is that restrictive. FedEx is permitted to terminate the contract without notice or reason, leaving contractors without any understanding as to why they were terminated. FedEx also undoubtedly possesses the information relevant to FedEx's liability for wrongful termination. A contractor's capacity to vindicate his or her claim of wrongful termination will be severely constricted without this evidence. But the discovery provision prevents the contractor from conducting any discovery as to liability, including propounding interrogatories, noticing depositions, seeking requests for admission, and requesting documents related to the COA's termination. The discovery provision requires contractors to operate in the dark and essentially guarantees that a contractor will not be able to gather the information required to support a claim for wrongful termination against FedEx.

FedEx's argument that the discovery limitation is fair because it limits both sides' ability to conduct discovery is disingenuous. FedEx would not need to conduct significant discovery as to whether its termination of a contractor was wrongful. Surely FedEx knows the reason why it terminated the COA. The only information that FedEx would need to acquire in an action for wrongful termination relates to the damages suffered by the contractor. Admittedly, the contractor likely possesses most of this information. But the COA permits FedEx to seek unlimited discovery as to those damages. Simply put, the discovery provision provides a vehicle for FedEx to obtain the information that it would need to defend itself while stacking the deck against a contractor seeking to establish liability for wrongful termination. Whether by design or effect, FedEx denies contractors a fair opportunity to develop the evidence necessary to support their claims.[7]

provision is not responsive to the issue of whether the provision, as written, is substantively unconscionable.

**7.** It is of no moment that FedEx has provided Mr. Openshaw with some discovery or has been willing to consider permitting depositions. At present, FedEx maintains unilateral control over the discovery process, and Mr. Openshaw can gain no assurance that he has been provided with all of the existing documentation that he would need to support his claim.

The next unconscionable provision is the damages limitation provision. This provision gives FedEx the unilateral option of electing either to pay lost net earnings through the remainder of the two-year contract or to reinstate the contract and pay only lost net earnings for the period during which the contract was wrongfully cancelled. This provision is very favorable to FedEx and very unfavorable to the contractor. It works to drastically limit the damages that FedEx will incur if it is found liable for wrongful termination, no matter the scenario. The contractor will always be prevented from recouping any of his or her original investment in the business or any other consequential loss incurred as a result of FedEx's wrongful termination. Mr. Openshaw invested hundreds of thousands of dollars into becoming a FedEx contractor, which is a great deal more than he could possibly recoup through the arbitration proceeding.

Even worse, FedEx can choose to reinstate the contract despite the fact that the contractor no longer has the equipment and resources necessary to perform and does not want to be reinstated. (Compl. ¶ 30(e).) Under this scenario, FedEx can almost completely avoid paying damages. If FedEx chooses to reinstate a contractor who is no longer able to perform, the contractor will have to cancel the contract shortly after the reinstatement. Alternatively, the contractor will fail to perform and FedEx can terminate the contract for cause. In this scenario, FedEx would not have to pay any damages for the second termination, even if the first termination was, in fact, wrongful.[8] This provision operates to insulate FedEx, a large, nationally-recognized commercial entity who clear-

ly had the upper hand in "negotiating" the agreement, from paying damages, even where it has acted wrongfully. *Carll v. Terminix Int'l Co., L.P.*, 793 A.2d 921, 924 (Pa.Super.Ct.2002).

■■■■ The next unconscionable arbitration provision concerns the arbitrator's ability to allocate costs. The COA's cost allocation provision states:

> The arbitrator shall have the authority only to conclude whether the termination of Contractor was within the terms of this Agreement, to determine damages if required to do so under this subparagraph, and to provide for the division of the AAA fees and AAA assessed expenses of the arbitration between the parties; provided, however, each party shall bear the cost of attorneys, expert witnesses, or other expenses incurred by that party, and the arbitrator shall have no authority to allocate or apportion such costs.

(DRJN, Ex. A § 12.3(e).) Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Pennsylvania law provides that an arbitration provision allocating costs is unconscionable "if the costs associated with arbitration of a single claim would operate to preclude a claimant from pursuing a remedy." *McNulty v. H & R Block, Inc.*, 843 A.2d 1267, 1273 (Pa.Super.Ct.2004), *appeal denied*, 578 Pa. 709, 853 A.2d 362 (2004), *cert. denied*, 543 U.S. 1021, 125 S.Ct. 667, 160 L.Ed.2d 497 (2004). Determining

---

8. Even if FedEx decides not to reinstate the contractor and instead pays lost net earnings for the remainder of the contract, someone in Mr. Openshaw's position, who had only worked for four months, would have limited ability to demonstrate what the lost net earn-

ings would have been. This could result in minimal damages and will certainly not compensate the contractor for the hundreds of thousands of dollars spent on the initial investment.

whether the costs deprive a plaintiff of a forum requires a fact-specific analysis of the particular case. *Green Tree Fin.*, 531 U.S. at 92, 121 S.Ct. 513.

The COA's cost allocation operates to limit a contractor's capacity to vindicate his or her claim. The initial expense of arbitration here is so high that many contractors would reasonably conclude that the expense is unmanageable, especially when contrasted with the limited remedies available under the COA. The initial filing fee for arbitration was $6,000, and the case service fee was $2,500.[9] (Openshaw Decl. ¶ 11.) Mr. Openshaw was also obligated to pay half of the arbitrator's $300 hourly fee, which totals to at least $4,200, and potentially more if the hearing extends beyond one day. (Openshaw Decl. ¶ 11.) Mr. Openshaw might spend in excess of $12,700 arbitrating his wrongful termination claim against FedEx. After spending his life savings becoming a FedEx contractor, Mr. Openshaw was nearly $346,000 in debt when his contract was terminated. (Openshaw Decl. ¶ 8.) He is not currently in a position to be spending an additional $12,700 on arbitration fees. (Openshaw Decl. ¶ 8.) This cost is a significant disincentive and obstacle to filing a claim for wrongful termination.

FedEx contends that the arbitrator can apportion costs, so the provision is not unconscionable. But the arbitrator does not allocate costs until after the proceeding is over. Mr. Openshaw is responsible for up-front fees and must risk the possibility that the arbitrator will allocate all costs to him. Considering the limited remedies available to him even if he does win, Mr. Openshaw stands to spend thousands of dollars on a proceeding that "may or may not prove mildly successful." *Lucey*, 2007 WL 3052997, at *11. It is understandable, then, why Mr. Openshaw, or any other contractor, would be hesitant to proceed with an arbitration that could result in such limited recovery while contributing substantially to the significant debt he has already amassed as a result of acquiring the business.

The final unconscionable arbitration provision prohibits the arbitrator from issuing a written opinion. The COA provides that the "arbitrator shall provide the parties with only a written determination of the outcome of the arbitration, without accompanying opinion, and shall have no authority to alter, amend or modify any of the terms and conditions of this Agreement ..." (DRJN, Ex. A § 12.3(e).) It would be difficult indeed for a reviewing court to perform its appellate function of judicial review if the arbitrator did not file an explanation of his decision. This provision will interfere with a reviewing court's effort to efficiently administer justice. The Court can see no reason for this prohibition except, as so aptly pointed out by another federal court, that it is "FedEx's attempt to maintain spin control" and preemptively hamper a reviewing court's ability to determine whether to vacate or otherwise correct the arbitrator's decision. *Lucey*, 2007 WL 3052997, at *12. While it is true that arbitrators need not be required to produce written opinions, there is a significant difference between not requiring written opinions and prohibiting them. One way provides the contractor with the possibility of obtaining a clearer record, the other explicitly prevents it.[10]

---

9. The AAA permitted Mr. Openshaw to defer these fees due to his financial hardship, but he is still obligated to pay them. (Openshaw Decl. ¶ 11.) In addition, there is nothing in the agreement that requires the arbitrator to defer the fees.

10. Mr. Openshaw also contends that the COA's provision concerning access to the courts is unconscionable. This provision provides:

As to any dispute or controversy which under the terms hereof is made subject to

Where parts of an arbitration provision are unconscionable, the arbitration provision can be saved when the unconscionable portion "represent[s] only a part of [the] agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 215 (3d Cir.2003). Where "the stricken portion of the ... arbitration agreement constitutes an essential part of the agreed exchange of promises," the entire agreement will not be enforced. *Id.* The arbitration agreement here was the result of one-sided bargaining that unfairly advantaged FedEx. If the Court were to sever the unconscionable provisions, there would be nothing left. Since FedEx's arbitration agreement is so riddled with unconscionable provisions, the arbitration agreement, in its entirety, is unenforceable.

### 2. Mr. Openshaw Did Not Waive His Objection to Arbitration

 FedEx argues that the Court may dismiss this action because Mr. Openshaw waived his right to object to arbitration by initiating arbitration and by failing to voice his objection to the arbitration proceeding until a few months into it. As the Ninth Circuit has made clear, even when a party participates in arbitration, he does not necessarily waive the right to object to it. *Nagrampa v. MailCoups,*

*Inc.,* 469 F.3d 1257, 1277 (9th Cir.2006) (en banc).

In *Nagrampa,* the plaintiff participated in the arbitration by seeking a 90–day continuance from the arbitrator, sending a letter objecting to the validity of the arbitration provision, participating in one conference call that resulted in a scheduling order, unsuccessfully attempting to file a counter-demand, and propounding a set of discovery requests. *Nagrampa,* 469 F.3d at 1277–78. The Ninth Circuit held that even though the plaintiff had participated in the arbitration, the plaintiff had voiced an objection to its validity and so did not waive the right to object in a later court proceeding. *Id.* The Ninth Circuit also contrasted the *Nagrampa* case with prior cases in which parties had participated extensively in litigating the merits of the arbitration and the objecting party had never previously raised an objection. *Id.* at 1279 (citing *Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1440 (9th Cir.1994); *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355 (9th Cir.1983) (per curiam)). For example, in *Nghiem,* the plaintiff was not permitted to challenge the arbitrator's authority after-the-fact because the plaintiff had "initiated the arbitration, attended the hearings with representation, presented evidence, and submitted a closing brief of fifty pages" before filing suit in state court. *Nghiem,* 25 F.3d at 1440. In *Dan-*

arbitration, no suit at law or in equity based on such dispute or controversy shall be instituted by either party hereto ... provided, however, that this clause shall not limit FedEx Ground's right to obtain any provisional remedy including, without limitation, injunctive relief, writ for recovery or possession of similar relief, from any court of competent jurisdiction, as may be necessary in FedEx Ground's sole subjective judgment to protect its property rights.
(DRJN, Ex. A § 12.3(e).) As the Third Circuit has held, restricting access to the courts by only one party is not, standing alone, unconscionable. *Harris,* 183 F.3d at 183. FedEx

directs the Court to a Pennsylvania Court of Common Pleas decision in which the court determined that it was convinced that this arbitration provision is not unconscionable because it clearly was meant to preserve FedEx's right to maintain the company's status quo and protect its property interests during the course of the arbitration. *Worman,* 76 Pa. D. & C.4th at 308–09. The Court agrees. It is not unreasonable for FedEx to attempt to preserve its property interests if a former contractor initiates an arbitration proceeding against it and threatens to keep customers' property.

*iel,* the plaintiff waived his objection to arbitration because he raised it only after attending two hearings on the merits and after the employer had presented all of its evidence. *Daniel,* 724 F.2d at 1355–57.

Analogizing to the plaintiffs' involvement in *Nghiem* and *Daniel,* FedEx argues that since Mr. Openshaw initiated the arbitration, he waived his opportunity to object to it. This is not a fair comparison. It is quite clear that Mr. Openshaw filed his arbitration demand quickly in response to the 90–day statute of limitations. He was concerned about preserving his rights and would not have been able to obtain a ruling as to the enforceability of the arbitration provision until the 90–day statute of limitations had already passed. No person in Mr. Openshaw's position, especially one unrepresented by counsel, would risk giving up any chance of redress by failing to file for arbitration when it appeared from the face of the COA that arbitrating the wrongful termination claim was mandatory. Furthermore, Mr. Openshaw's involvement in the arbitration thus far is much more like the plaintiff's involvement in *Nagrampa* than the plaintiffs' involvement in either *Nghiem* or *Daniel.* The substantive merits of Mr. Openshaw's claim have not been addressed, either through evidence or briefing. The arbitrator has certainly not made a final determination as to Mr. Openshaw's claim and damages have not been assessed nor have fees been calculated. Even though the parties have been engaging in discovery, so too had the plaintiff in *Nagrampa,* and the Ninth Circuit did not find that the

plaintiff in that case had waived the right to contest the arbitration.[11]

FedEx alternatively argues that by filing an arbitration demand, Mr. Openshaw created an independent, second agreement to arbitrate. FedEx cites to an unpublished district court case from Pennsylvania as support for the proposition that where a party files an arbitration claim, a second, separate agreement to arbitrate has been created. *A.G.K. Sarl v. A.M. Todd Co.,* 2008 WL 724607, at *8 (E.D.Pa. March 18, 2008). This is not what the district court in A. G.K. said. The district court said, "[a]lthough a party usually indicates its intent to arbitrate by signing a contract that includes an arbitration clause, it can also indicate its consent by bringing and prosecuting an arbitration proceeding." *A.G.K.,* 2008 WL 724607, at *7 (emphasis added). The court then cited to a Third Circuit case, in which parties had previously demanded arbitration, fully participated in it, and were represented by counsel, as an example of a situation where a party demonstrated an unmistakable intent to arbitrate the dispute by initiating the arbitration. *A.G.K.,* 2008 WL 724607, at *8 (citing *United Indus. Workers, Local No. 16 v. Gov't of the V.I.,* 987 F.2d 162 (3d Cir.1993)). Mr. Openshaw was not indicating his unmistakable intent to arbitrate by filing an arbitration demand, he was merely preserving his right to relief by filing within the excessively short limitations period. By stating his objection to arbitration and then filing this complaint, he clearly did not indicate his intent to create a separately enforceable agreement to arbitrate.[12]

---

11. FedEx also raises the point that Mr. Openshaw only raised an objection to the discovery provision but did not assert that the arbitration agreement was altogether unenforceable. Once the arbitrator told Mr. Openshaw that he could not alter the discovery provision, it would have been a meaningless exercise for Mr. Openshaw to raise his objections to the remainder of the other arbitration provisions.

12. FedEx also asserts that the Mr. Openshaw may not pursue his claims in federal court because this matter constitutes a second-filed lawsuit between the same parties on the same causes of action. California's rule of exclusive concurrent jurisdiction applies when two courts have concurrent jurisdiction over the subject matter and all parties involved in the litigation. *Plant Insulation Co. v. Fibreboard*

In sum, the arbitration provisions of the COA were negotiated in a procedurally unconscionable manner and are unreasonably favorable to FedEx. The arbitration provisions were presented to Mr. Openshaw on a take-it-or-leave-it basis after he had invested substantial time and resources into becoming a FedEx contractor. He had no choice but to agree to those provisions even though they drastically shortened his time for filing a claim, prohibited him from conducting any discovery as to liability, significantly limited the damages that he could recover for wrongful termination, imposed significant costs on him to arbitrate his claim and prevented him from obtaining any meaningful review of the arbitrator's decision. This is not a fair fight. The arbitration provisions essentially guarantee a favorable outcome for FedEx. The Court must give Mr. Openshaw a fair opportunity to resolve his claim for wrongful termination by litigating it in this Court.

## IV. CONCLUSION

For the foregoing reasons, FedEx's motion to compel arbitration is DENIED.

Corp., *224 Cal.App.3d 781, 786–87, 274 Cal. Rptr. 147 (Cal.Ct.App.1990);* see also Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co., *843 F.2d 1253, 1258 (9th Cir.1988) (declining to exercise jurisdiction may be appropriate where there is a conflict between the jurisdiction of federal and state sovereigns).* FedEx has cited no authority to suggest that the Court must abstain from hearing a case when there is an arbitration proceeding pending, as opposed to a concurrent proceeding in a state or federal court, involving the same parties and at least some related claims. *In addition, it is clear that Mr. Openshaw seeks to litigate his case in federal court and not in any other forum. Mr. Openshaw has not voluntarily dismissed the arbitration yet because dismissing without first obtaining a ruling that the arbitration provisions are unenforceable would mean risking losing all right to relief. Mr. Openshaw's preservation of his right to relief is not the same as fully litigating the merits of his claim in multiple tribunals, which he has not done and which the Court obviously would not permit.*